Carol F. LARSEN, et al., Plaintiffs,

v.

DELTA AIR LINES, INC., et al., Defendants,

v.

Jack WILLIAMS and Richard C. Douglass.

Civ. A. No. H–86–747.

United States District Court,
S.D. Texas,
Houston Division.

July 29, 1988.

Joe Jamil, Houston, Tex., for plaintiffs.

D. Dudley Oldham, Fulbright & Jaworski, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McDONALD, District Judge.

This is a wrongful death action arising out of the death of William Gale Larsen on

August 2, 1985. On that date, William Larsen was a passenger on a Delta Air Lines L–1011 Jet, Flight 191, proceeding from Fort Lauderdale, Florida to the Dallas/Fort Worth International Airport, when the plane crashed on its final landing approach to the Dallas/Fort Worth airport. Plaintiff Carol Larsen is the surviving widow of Mr. Larsen; Plaintiffs Narion G. Larsen and Barbara Larsen are his surviving parents. Plaintiffs are the beneficiaries entitled to bring this action pursuant to the Texas Civ.Prac. & Rem.Code Ann. § 71.001, *et seq.* Plaintiff Carol Larsen also brings this case in her capacity as the sole heir and representative of the estate of William Larsen, pursuant to the Texas Civ.Prac. & Rem.Code Ann. § 71.021, for any conscious pain and suffering of William Larsen immediately before his death. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Pursuant to Federal Rules of Civil Procedure 52, the Court enters these findings of fact and conclusions of law establishing the basis for its disposition of this case.

### Findings of Fact

1. This lawsuit began with the filing of Plaintiffs' Original Petition in the 164th Judicial District Court, Harris County, Texas, on October 25, 1985. Plaintiffs' First Amended Original Petition was filed in the 164th District Court on November 7, 1985. Thereafter, third-party Defendants, Jack Williams and Richard Douglas were brought into this action by Defendant, Kathleen Conners, Executrix of the Estate of Edward M. Connors. Third-party Defendants, Williams and Douglas, both of whom were employees of the United States, removed the action by Petition for Removal to the United States District Court, Southern District of Texas, Houston Division, filed February 19, 1986. The removed action was transferred, pursuant to the June 26, 1986 Transfer Order of the Judicial Panel for Multidistrict Litigation, to the Northern District of Texas. The case was returned to the Southern District of Texas, Houston Division, by Transfer Order of the Multidistrict Litigation Panel filed herein on May 27, 1986.

2. By stipulation signed by counsel for Plaintiffs and counsel for Defendant Delta Airlines, Inc., filed in MDL 657, Northern District of Texas, the parties have stipulated as follows:

(a) Defendant Delta shall not contest its liability in this action for the happening of this accident and Plaintiffs shall not be required to establish said Defendant's liability for said accident;

(b) Defendant Delta consents to an entry of judgment for Plaintiffs for compensatory damages after trial, in an amount determined by the jury or Court;

(c) Plaintiffs waive any claims for punitive or exemplary damages and agree to dismiss all Defendants other than Delta Airlines, Inc.

Plaintiffs' Ex. 16.

3. Accordingly, based upon the procedural history of this action and the stipulation of counsel, this action came on before the Court for trial to the Court without a jury on issues of damages only between the Plaintiffs, Carol F. Larsen, individually and as representative of the estate of William Larsen, Narion G. Larsen and Barbara Larsen, and Defendant Delta Airlines, Inc.

4. This is a wrongful death action arising out of the death of William Gale Larsen on August 2, 1985. On that date, William Gale Larsen was a passenger on a Delta Airlines L–1011 Jet, Flight 191, proceeding from Fort Lauderdale, Florida to the Dallas/Fort Worth International Airport, when the plane crashed on its final landing approach to the Dallas/Fort Worth airport.

5. Mr. Larsen was born on May 11, 1953 and he was 32 years old on the date of the crash.

6. Mr. Larsen was survived by his wife, Carol Larsen. They were married December 28, 1975. They resided in Plano, Texas on the date of the accident. Mrs. Larsen was born on May 3, 1954; she was 31 years old on the date of the accident. They had no children.

7. Mr. Larsen also was survived by his parents, Narion G. Larsen and Barbara Larsen. Narion Larsen was born on Au-

gust 20, 1924 and was nearing the age of 61 at the time of the crash. Barbara Larsen was born on February 10, 1923 and was 62 years old at the time of the accident. Narion and Barbara Larsen resided in Albuquerque, New Mexico, on the date of the crash.

8. William Larsen's educational background included a Bachelor of Science Degree in Physics and Mathematics from the University of New Mexico in 1976 and a Master of Science Degree in Physics from the University of Michigan in 1978. In 1979, Mr. Larsen achieved a Ph.D. Candidacy in Physics from the University of Michigan. At the time of his death, Mr. Larsen had completed all the work necessary for his Ph.D. except the final chapter of his thesis.

9. William and Carol Larsen met at the University of New Mexico at Albuquerque where they were both pursuing undergraduate degrees. They moved to Ann Arbor, Michigan in 1976 and remained there until Mr. Larsen completed his Master's Degree in Physics. In 1980, the Larsens moved to California where they lived and worked for four years. In 1984, an employment opportunity for Mrs. Larsen prompted the Larsens to move to Texas where they lived in the Dallas area until the time of Mr. Larsen's death.

10. Mr. Larsen was employed as an engineer with the Southland Corporation in Dallas at the time of his death. He had been so employed since October of 1984. At the time of his death, his annual salary was $36,000.00 plus a bonus based on company profits which, historically, had been in the range of 17% to 20% of the employee's annual salary. Mr. Larsen also received employee fringe benefits of life and medical insurance. Prior to his employment with Southland, Mr. Larsen's employment history was as follows:

—3/3/81 to 7/13/84: Engineer/Staff Analyst Energy Specialist with Chevron USA Refinery in Richmond, California. Wages began at $24,000 annually and were $39,500.00 annually at time of departure.

—9/1/80 to 3/31/81: Staff Analyst, Industrial Energy Demand Forecasting, California Energy Commission, Sacramento, California. Salary—$25,000 annually.

—9/1/76 to 9/80: Graduate Student, Research Assistant in Physics, University of Michigan. Salary—$14,532.00 annually.

*See* Plaintiffs' Exs. 6, 7, 8 and 9. Defendant's Exs. 4, 4a, 5, 5a and 6.

11. The Court reviewed portions of the video depositions of four individuals who survived the accident. The testimony indicated that Delta Flight 191 appraoched Dallas/Fort Worth International Airport during a storm. As it prepared to land, the aircraft experienced a downward thrust. The plane made contact with the ground, rose briefly, and the made contact with the ground once more. During this second contact, the fuselage slid along the ground, burst into flames, and broke into several pieces. One witness, Ronald Harris, estimated that between two and three minutes elapsed between the time of the downward thrust and the time the aircraft began sliding along the ground.

12. The testimony varied as to the severity of both the downward thrust and the plane's initial contact with the ground. *See* Defendant's Exs. 13 and 16; Plaintiffs' Exs. 23, 23–A, 24, 24–A. None of the witnesses could recall seeing or hearing William Larsen during the accident.

13. Throughout his life, William Larsen enjoyed excellent health, both physically and mentally. He enjoyed the sports of swimming and running. He was an energetic, enthusiastic, hardworking person. He worked his way through college with some help from his parents. He had many friends and was well liked. He was very close to his parents and his three sisters.

14. The death of William Larsen has caused his wife and his parents each to suffer emotional pain, torment, suffering, and mental anguish. The husband/wife, parent/child relationships have been forever terminated and this has caused the survivors to experience the loss of Mr. Larsen's love, comfort, support, companion-

ship, and society. Carol Larsen has forever lost her husband's financial support, care, advice, maintenance, and counsel. She has also lost the many household services that Mr. Larsen provided.

15. Carol Larsen consulted a psychiatrist, Dr. Jim Black, ten or eleven times after the crash. Dr. Black referred her to Dr. Irv Humphrey, whom she saw twice; her last visit was on July 8, 1986. Since then, Carol Larsen has sought no additional professional medical care or consultation.

16. Narion and Barbara Larsen saw the decedent and Carol Larsen approximately three times in the year preceding the crash, although they resided in difference cities. Although Narion and Barbara Larsen were not financially dependent upon their only son, they enjoyed the security and comfort of knowing he would always be there to help them.

17. William Larsen died intestate. His funeral expenses, totalling $3,118.24, were paid by Defendant Delta.

18. At the time of his death, William Larsen was 32 years of age and had a life expectancy of 41 years according to the life tables of the United States Department of Health and Human Services. Plaintiffs' Ex. 4.

19. Any of the foregoing findings of fact deemed to be conclusions of law are hereby adopted as such.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and parties to this action pursuant to 28 U.S.C. § 1332.

2. Pursuant to the stipulation filed in this action, the Court finds that Defendant Delta Airlines, Inc., did not contest liability in this action and that Plaintiffs were not required to establish liability, fault, or proximate cause on the part of Delta in connection with the death of William Gale Larsen, on Delta Flight 191 on August 2, 1985. The issues of liability, fault, and proximate cause were not litigated in this action.

3. No conduct of the decedent contributed to cause his death.

4. Texas law governs the measure of damages applicable to this case removed to this Court on the basis of diversity jurisdiction. *Smith v. Industrial Constructors, Inc.,* 783 F.2d 1249, 1250 (5th Cir.1986).

### Recoverable Damages

5. Carol Larsen is the surviving spouse of the deceased, William Larsen. Pursuant to Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001 *et seq.,* she is entitled to recover damages for her (1) pecuniary losses, (2) loss of companionship and society, (3) mental anguish, and (4) loss of inheritance. Each element of damage is to be considered separately. *Clifton v. Southern Pacific Transportation Co.,* 709 S.W. 2d 636 (Tex.1986); *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630 (Tex.1986).

Pecuniary loss for the surviving spouse is defined as the care, maintenance, support, services, advice, counsel and reasonable contributions of a pecuniary value, excluding loss of inheritance, that the surviving spouse would, in reasonable probability, have received from the decedent had he lived. *See Moore v. Lillebo,* 722 S.W.2d 683, 687 (Tex.1986).

Loss of companionship and society in the case of a surviving spouse now subsumes damages for loss of consortium and sexual relations. *Id.* at 687–88. It means the loss of the positive benefits flowing from the love, comfort, companionship, and society that the surviving family members would, in reasonable probability, have received from the decedent had he lived. *Id.*

Mental anguish is defined as the emotional pain, torment, and suffering that the Plaintiffs would, in reasonable probability, experience from the death of the family member. *Id.* Mental anguish and loss of society and companionship are separate elements of recovery. *Id.* at 688. The "physical manifestation" rule has been rejected in wrongful death cases. *Id.* at 686.

Loss of inheritance means the present value of the assets, in excess of family living expenses, that the decedent would, in reasonable probability, have add-

ed to the estate and that would, in reasonable probability, have been the property of the surviving family member at the end of the decedent's natural life. *Yowell,* 703 S.W.2d at 632–34.

6. Likewise, the surviving parents of an adult child have causes of action for their (1) pecuniary losses, 2) loss of companionship and society, (3) mental anguish, and (4) loss of inheritance. *Moore v. Lillebo, supra; Clifton v. Southern Pacific Transportation Co., supra; Yowell v. Piper Aircraft Corp., supra;* Tex.Civ.Prac. & Rem.Code Ann. §§ 71.002 *et seq.* In the present case Narion and Barbara Larsen make no claim for loss of financial support or loss of inheritance. They seek only damages for loss of companionship and society and for mental anguish.

7. Under the Texas Survival Act, Tex.Civ.Prac. & Rem.Code Ann. § 71.021, the estate of William Larsen is entitled to recover for any conscious pain and mental anguish suffered by William Larsen prior to his death. Pursuant to Texas law, the only pain and anguish which is compensable is that which the decedent consciously experienced prior to his death. *Stanford v. McLean Trucking Co.,* 506 F.Supp. 1252, 1255 (E.D.Tex.1981); *Southern Pacific Transportation Co. v. Luna,* 730 S.W.2d 36, 38 (Tex.App.—Corpus Christi 1987, no writ).

8. Prejudgment interest is recoverable on the Plaintiffs' past actual wrongful death damages, and the decedent's survival damages. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985). The calculation of prejudgment interest in this case is controlled by *Cavnar,* rather than Tex.Rev.Civ.Stat.Ann. Art. 5069–1.05, § 6 (1987), because this lawsuit was commenced prior to September 2, 1987, the effective date of the amendatory provisions of Article 5069–1.05. *See,* Tex.Rev.Civ. Stat.Ann. Art. 5069–1.05, § 3(b) (1987 amendments).

### Method of Computation

9. In awarding damages to Plaintiffs for their non-pecuniary losses, the Court based the award on the testimony adduced at trial and looked to comparable Texas and Fifth Circuit cases. No attempt was made to distinguish between past and future losses of companionship and society suffered by the Plaintiffs nor between their past and future mental anguish. *See Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 639 F.Supp. 385, 405 (E.D.Tex.1986), *aff'd in part, rev'd in part,* 828 F.2d 278 (5th Cir.1987).

10. The parties agree that Texas law governs the elements of recoverage damages in this action. They disagree, however, as to the applicable law governing the computation of Plaintiffs' pecuniary damages. The Defendant argues that the Court is bound to adopt the below-market discount rate method as outlined by the Fifth Circuit in *Culver v. Slater Boat Co.,* 722 F.2d 144 (5th Cir.1984) (*Culver II*). By contrast, the Plaintiffs argue that the Court is not so restricted and need only be guided by the general admonition of the Texas courts to award damages "equal to the 'sum of money, if any, if now paid in cash' that would compensate the Plaintiff." *Budge v. Post,* 643 F.2d 372, 375 (5th Cir. 1981).

11. The resolution of this dispute affects at least two factors used in computing pecuniary losses—the adjustment of the decedent's lost future wages to account for federal income taxes and the adjustment of the damage award to account for inflation.

Under Texas law, the fact finder need not reduce a wrongful death damage award to take into account federal income taxes. *Texas Consolidated Transportation Co. v. Eubanks,* 340 S.W.2d 830, 836–37 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.). Indeed, Texas law specifically forbids an instruction on the taxability of the award. *Hansen v. Johns–Manville Products Corp.,* 734 F.2d 1036, 1045 (5th Cir. 1984); *Missouri–Kansas–Texas R.R. Co. v. McFerrin,* 291 S.W.2d 931, 945 (Tex.1956). *Culver II,* however, requires that a decedent's lost future income be adjusted for tax effects. *Culver II,* 722 F.2d at 122.

Under both Texas law and *Culver II,* the Court is instructed to adjust the award for future inflation, i.e., to calculate the present value of the award. As previously mentioned, Texas law does not specify the means to achieve this and while *Culver II* requires application of the below-market discount rate method.

12. The Court concludes that in this diversity case applying Texas tort law, state law governs the computation of damages. *See Smith v. Industrial Constructors, Inc.,* 783 F.2d 1249, 1250–52 (5th Cir.1986); *Martinez v. United States,* 780 F.2d 525, 528 (5th Cir.1986) (Federal Torts Claim Act case applying Texas law); *Budge v. Post,* 643 F.2d 372, 375 (5th Cir.1981). Consequently, the Court's award for pecuniary losses does not take into account federal income taxes and is discounted in present value by the method described hereinafter.[1]

13. Evidence presented at trial revealed that at the time of his death, William Larsen had an annual salary of $36,000 and a bonus of 16% of his wages. Plaintiffs' Ex. 9. Since Mr. Larsen died on August 2, 1985, his salary for the remaining portion of the year would have been $14,796 and the bonus would have been $2,367. For the years 1986 and 1987 the decedent's wage was adjusted upward by 4% while the bonus remained at 16%.

14. For the years 1988 through 2018 (Larsen's expected retirement at age 65), the wage was adjusted upward to account for promotion and experience gains. Testimony of Plaintiffs' expert, Dr. Thomas Mayor, indicated that the average earnings for American male workers with five or more years of college are 38.6% higher at age 35–44 than at age 25–34. Similarly, workers age 45–54 earn 59.1% more than workers at age 25–34, and workers age 55–64 earn 65.9% more. The Court adjusted the decedent's expected wage to reflect these increases.

15. To the annual wage, a 16% bonus was added. That figure represents the percentage bonus that the decedent received in 1985 and is in the range historically paid by his former employer Southland Corporation.[2]

Finally, the matching contributions of the employer to the decedent's retirement fund were added. The evidence presented revealed that the employer's contribution increased with a worker's seniority. The contribution begins after one year by matching 30% of the worker's contribution up to 7% of wages. After five years the company matches 60%, after ten years it rises to 100%, and after fifteen years it is 200%.

16. The estimated loss for each year—the wage plus the bonus plus the retirement benefits—was then reduced by 30% to reflect the decedent's personal consumption. The remaining sum would be available to provide support for Mr. Larsen's surviving spouse.

17. After 1987, the present value of the decedent's lost income was derived using a discount rate of 3%.

18. Another element of Plaintiff Carol Larsen's pecuniary loss, in addition to the decedent's lost earnings, is the value of the household services Mr. Larsen would have provided over the period of his life expectancy. *See Hope v. Seahorse, Inc.,* 651 F.Supp. 976, 992 (S.D.Tex.1986).

---

1. The Defendant notes that one district court applying Texas law reduced its award of pecuniary damages to reflect the taxes the decedent would have paid. *Moorhead,* 639 F.Supp. at 403. That court cited no state court decisions authorizing such a reduction, and instead relied upon cases applying federal statutory law. The Fifth Circuit affirmed the reduction, but noted that the calculations of pecuniary losses were not challenged on appeal. *Moorehead v. Mitsubishi Aircraft Int'l, Inc.,* 828 F.2d 278, 291 n. 65 (5th Cir.1987). Finding no state cases overruling *Eubanks* and *McFerrin,* the Court continues to follow those precedents in this case.

Moreover, because Texas law does not mandate a specific computation formula, a court could conceivably adopt a discount rate that would be consistent with *Culver II* while applying state law.

2. Although it is true that an employee's bonus varied depending upon the profitability of the company, it is also true that the bonus percentage generally increased with seniority. The Court believes that by maintaining the bonus at a constant 16%, this element of the decedent's compensation will be adequately considered.

Based upon the evidence presented at trial, the Court concludes that the decedent would have provided household services at rate of $4,000 a year until age 74. The present value of the decedent's household services was derived using a discount rate of 3%.

### Damage Awards

■ 19. The Court finds that Carol Larsen, surviving spouse of William G. Larsen, has sustained the following damages by reason of her husband's death:

(a) Pecuniary losses in the past: $ 84,616

(b) Pecuniary losses, that in reasonable probability, she will sustain in the future: $1,115,558

(c) Loss of companionship and society in the past and in the future: $ 500,000

(d) Mental anguish in the past and in the future: $ 500,000

■ 20. The Court finds that Narion G. Larsen, surviving parent of William G. Larsen, has sustained the following damages by reason of his son's death:

(a) Loss of companionship and society in the past and in the future $ 150,000

(b) Mental anguish in the past and in the future $ 250,000

21. The Court finds that Barbara Larsen, surviving parent of William G. Larsen, has sustained the following damages by reason of her son's death:

(a) Loss of companionship and society in the past and in the future $ 150,000

(b) Mental anguish in the past and in the future $ 250,000

■ 22. The Court finds that the Plaintiffs have failed to prove the likelihood that the decedent would have accumulated assets greater than the amount he and his family would have used for support. Consequently, damages for loss of inheritance are denied. *See Yowell,* 703 S.W.2d at 633.

■ 23. The decedent's estate is entitled to recover for any pain or mental anguish that William Larsen consciously experienced. *Stanford v. McLean Trucking Co.,* 506 F.Supp. 1252, 1255 (E.D.Tex. 1981). A damage award for the decedent's pre-impact mental anguish may not be granted when the evidence is speculative or conjectural. *Haley v. Pan American World Airways,* 746 F.2d 311, 316 (5th Cir.1984). Eyewitness testimony, however, is not required before such an award will be made. *Id.* at 317.

■ The Court finds that the conflicting testimony regarding the final minutes of Delta Flight 191 is too speculative to award damages for any pre-impact suffering that the decedent may have experienced. Crash survivors Ronald Harris and Gilbert Green testified that they experienced trepidation as the plane descended and made contact with the ground. On the other hand, survivors Paul Coke and Allen Keller testified that the plane's approach was consistent with other landings in stormy weather and that the plane's initial contact though somewhat rough, was not a cause for concern. The juxtaposition of these scenarios coupled with a lack of testimony relating directly to Mr. Larsen precludes an award for any pre-impact suffering of the decedent.

■ 24. Plaintiffs are awarded prejudgment interest at the rate of 10% compounded daily on past percuniary losses. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549. Since no attempt was made to distinguish between Plaintiffs' past and future losses of companionship and society or between Plaintiffs' past and future mental anguish, no prejudgement interest calculation is possible. *Moorhead,* 639 F.Supp. at 405.

25. Any conclusion of law deemed to be a finding of fact is hereby adopted as such.

26. Costs of Court are awarded against Defendant Delta.

27. Within ten (10) days of the entry of this Order counsel for Plaintiff are to submit to this Court a proposed judgment incorporating these findings. Plaintiff should, of course, consult with opposing

counsel concerning the form of the judgment.

It is so ORDERED.