**In re AIRCRASH DISASTER NEAR ROSELAWN, INDIANA ON OCTOBER 31, 1994.**

No. 95 C 4593.
MDL No. 1070.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 22, 1996.

Janice R. Forde, Kevin Michael Forde, Kevin M. Forde, Ltd., Chicago, IL, Michael L. Slack, Slack & Davis, L.L.P., Austin, TX, Gerard R. Lear, Speiser, Krause, Madole & Lear, Rosslyn, VA, Terry O'Reilly, Law Offices of O'Reilly & Collins, Menlo Park, CA, Thomas P. Meehan, Sherman, Meehan & Curtis, P.C., Washington, DC, James T. Crouse, Speiser & Krause, Rosslyn, VA, for Plaintiffs.

Storrs Whitworth Downey, Landau, Omahana & Kopka, Ltd., Chicago, IL, for Ingersoll Milling Machine Company.

Michael P. Connelly, Thomas F. Tobin, John M. Kelly, Connelly & Schroeder, Chicago, IL, for Avions de Transport Regional, G.I.E., ATR Support, Inc., Alenia S.P.A., Aerospatiale, Inc.

Jerold Sherwin Solovy, Anton Ronald Valukas, Sidney I. Schenkier, Jenner & Block, Chicago, IL, Charles William Douglas, Sara J. Gourley, Sheila Ann Sundvall, Sidley & Austin, Chicago, IL, for American Airlines, Inc., AMR Corporation.

Jerold Sherwin Solovy, Anton Ronald Valukas, Sidney I. Schenkier, Jenner & Block, Chicago, IL, Robert L. Alpert, Chapel Hill, NC, for AMR Leasing Corporation, AMR Eagle, Inc., Robert H. Mittelman.

Charles William Douglas, Sara J. Gourley, Sheila Ann Sundvall, Sidley & Austin, Chicago, IL, Robert L. Alpert, Chapel Hill, NC, Thomas P. Meehan, Sherman, Meehan & Curtis, P.C., Washington, DC, for Simmons Airlines, Inc.

Richard Charles Palmer, Wildman, Harold, Allen & Dixon, Chicago, IL, for Honeywell, Inc.

1. The decedent and plaintiffs in one case presently before us, *Wright v. Simmons Airlines, Inc.,* No. 95 C 1018, are all domiciliaries of Indiana. Accordingly, the Court's prior holding in *Roselawn III* is directly applicable to *Wright,* although *Wright* was not one of the five cases considered there (*Wright* had not yet been transferred to this Court at the time of the motion). Because the Court has already issued a choice-of-law ruling in *Roselawn III* that would cover the compensatory damages sought in the *Wright* case, we apply our previous holding and find that Indiana law governs the compensatory damages available in that case. No further mention of *Wright* will be made in this opinion.

2. The motion sought a ruling in 36 of the cases that were then pending in this Court, including: *Anglemyer v. AMR Corp.,* No. 95 C 4959 (same plaintiff as in *Anglemyer v. Aerospatiale Societe Nationale Industrielle, S.A.,* No. 95 C 6923); *Bailenson v. AMR Corp.,* No. 95 C 0634; *Begeny v. AMR Corp.,* No. 96 C 1017; *Bonneau v. Simmons Airlines, Inc.,* No. 96 C 1088; *Bramley v. AMR Corp.,* No. 96 C 1089; *Brill v. AMR Corp.,* No. 96 C 1005; *Buck v. Simmons Airlines, Inc.,* No. 96 C 1496; *Calderon v. American Eagle, Inc.,* No. 95 C 2251; *Cunningham v. American Eagle, Inc.,* No. 95 C 2249; *DeMarco v. AMR Corp.,* No. 95 C 0631; *Dhlamini v. AMR Corp.,* No. 95 C 1058 (plaintiff Masilo); *Droy v. AMR Corp.,* No. 95 C 4998; *Dwyer v. AMR Corp.,* No. 95 C 2132; *Ernst v. American Airlines, Inc.,* No. 95 C 2250; *Harast v. American Eagle, Inc.,* No. 94 C 7651;

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This is the fourth opinion this Court has issued in these consolidated cases arising out of the fatal crash of American Eagle Flight 4184 near Roselawn, Indiana on October 31, 1994. In this opinion, the Court addresses the defendants' motion for a choice of law ruling establishing the substantive law to be applied to the claims of non-Indiana plaintiffs [1] for compensatory damages, specifically those damages sought for the passengers' pre-impact fear and terror. In its most recent previous opinion, *In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994,* 926 F.Supp. 736 (N.D.Ill.1996) ("*Roselawn III*"), this Court held that Indiana law applied to the compensatory damage claims of five Indiana plaintiffs and decedents. The defendants now seek a ruling that Indiana law governs the pre-impact fear damage claims of all other decedents and plaintiffs as well (the "Remaining Cases").[2] For the reasons stated below, the Court grants in part and denies in part the motion.

*Kangiser v. AMR Corp.,* No. 96 C ___; *Kim v. AMR Corp.,* No. 95 C 2174; *LaRoche v. Simmons Airlines, Inc.,* No. 96 C 1021 (now titled *Robitaille v. Simmons Airlines, Inc.*); *Leech v. AMR Corp.,* No. 96 C 0165; *MacKenzie v. AMR Corp.,* No. 95 C 0632; *McMillin v. AMR Corp.,* No. 95 C 4593; *Melamed v. AMR Corp.,* No. 95 C 0637; *Modaff v. AMR Corp.,* No. 95 C 0945; *Moore v. American Eagle, Inc.,* No. 95 C 6778; *Parmar v. AMR Corp.,* No. 95 C 0636; *Ramm v. AMR Corp.,* No. 95 C 7461; *Robitaille v. AMR Corp.,* No. 96 C 1022; *Sayles v. AMR Corp.,* No. 96 C 1200; *Severin v. American Eagle, Inc.,* No. 95 C 0252; *Shellberg v. AMR Corp.,* No. 95 C 4957 (same plaintiff as in *Shellberg v. Aerospatiale Societe Nationale Industrielle, S.A.,* No. 95 C 6891); *Sithole v. AMR Corp.,* No. 95 C 1023; *Spencer v. AMR Corp.,* No. 95 C 0629; *Thompson v. AMR Corp.,* No. 95 C 2407; *Wright v. AMR Corp.,* No. 95 C 1018.

Of these, five cases have since settled: *Bonneau, Calderon, Ernst, Harast,* and *Sayles.* The term "Remaining Cases" as used in this opinion will refer to the above 36 cases, minus these five and *Wright.*

One new case has been added since the motion was filed: *Moldawsky v. AMR Corp.,* No. 96 C ___. As the plaintiff in that case has not had an opportunity to brief this motion, our holding here will not be res judicata as to that plaintiff, although the doctrine of law of the case may well apply.

## RELEVANT FACTS

Many of the relevant facts concerning the tragic Flight 4184 were laid out in *Roselawn III*. Additional facts relevant here are largely supplied by Exhibit A to the defendants' motion, which lists the domiciles of the decedents, plaintiffs, and next-of-kin in all the Remaining Cases; the place where each decedent's estate is administered; the named defendants in each case, and their domiciles; and the state in which the action was originally filed. We note certain minor corrections made by the plaintiffs,[3] and otherwise incorporate Exhibit A by reference. To the extent that they are necessary to our analysis, these facts may be discussed in more detail below.

## ANALYSIS

### Existence of a Conflict

 A court need not conduct a choice of law determination unless there is an actual conflict in the substantive law such that the case could have a different outcome depending on which law is applied. *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979 ("Air Crash Chicago")*, 644 F.2d 594, 605 (7th Cir.1981). It is clear that such a conflict exists here on the issue before us: the availability of damages for a decedent passenger's pre-impact fear.

 The defendants ask this Court to apply Indiana law (the law of the place where the injury was sustained) on this issue in all the Remaining Cases. Indiana does not permit recovery for decedents' personal injuries, including pre-impact mental distress. *See Sekerez v. Gehring*, 419 N.E.2d 1004, 1007 (Ind.Ct.App.1981); Ind.Code § 34–1–1–1 (under Indiana law, a decedent cannot bring a claim for personal injuries that caused his death).

 By contrast, most of the plaintiffs ask the Court to apply the law of each decedent's domicile in his or her case. In most cases, these domiciliary states' laws offer greater

possibilities of recovery for pre-crash fear. For example, many of the decedents in the Remaining Cases were residents of Illinois before their deaths. Illinois permits recovery for a decedent's mental distress under certain circumstances when it is accompanied by a related physical injury. *See Kapoulas v. Williams Ins. Agency, Inc.*, 11 F.3d 1380, 1384–85 (7th Cir.1993) (analyzing Illinois law of emotional distress claims); 755 ILCS § 5/27–6 (1996) ("actions to recover damages for an injury to the person" survive the person's death). The laws of some other decedents' domiciles appear to be even more favorable, allowing recovery for this type of injury without requiring accompanying physical injury. *See, e.g., Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 53 (2d Cir.1984) (New York law permits recovery for aircrash decedent's pre-impact fear); *Chapple v. Ganger*, 851 F.Supp. 1481, 1487 (E.D.Wash.1994) (awarding pre-impact mental distress damages under Washington law in auto accident case); *Livingston v. United States*, 817 F.Supp. 601, 605 (E.D.N.C.1993) (decedent who "more likely than not ... knew that he was faced with imminent bodily injury before impact" could recover damages for pre-impact fear under North Carolina law); *Larsen v. Delta Air Lines, Inc.*, 692 F.Supp. 714, 721 (S.D.Tex.1988) (compensatory damages for decedent's pre-impact fear are generally available under Texas law). In addition, the parties represent that South Korean law permits recovery.

On the other hand, some plaintiffs' decedents resided in states or foreign countries with laws that would prevent recovery for pre-impact fear. *See, e.g.,* ARIZ.REV.STAT. § 14–3110 (providing for survival of certain actions but barring recovery for decedent's pain and suffering); CAL.CIV.PROC.CODE § 377.34 (damages recoverable in a survival action "do not include damages for pain, suffering"). The parties also submit that under English law, fear of impending death standing alone cannot give rise to a cause of action

---

**3.** Plaintiffs note that the defendants in *Cunningham v. American Eagle, Inc.*, No. 95 C 2249, *Moore v. American Eagle, Inc.*, No. 95 C 6778, and *Severin v. American Eagle, Inc.*, No. 95 C 252, should include: Simmons Airlines, Inc.,

AMR Eagle, Inc., AMR Leasing Corp., ATR Marketing, Inc., ATR Support, Inc., and Robert H. Mittelman. Avions de Transport Regional should not be listed as a defendant in any of these cases.

which survives that death. Some of these plaintiffs argue against applying the law of the decedent's domicile and instead seek the application either of Texas law, because that state is the principal place of business of some of the defendants,[4] or a new "federal common law" of air crash cases, to be created by reference to maritime law. These parties argue that either of these sources of law would permit recovery for mental distress experienced immediately prior to the crash. *See Larsen,* 692 F.Supp. at 721 (Texas law); *Anderson v. Whittaker Corp.,* 894 F.2d 804, 814 (6th Cir.1990) (maritime law recognizes survival claims for pre-death fear and terror).

It can easily be seen that a true conflict exists among the various states' laws that might apply here. Accordingly, this Court must engage in a two-step analysis: determining the proper choice of law rule to be applied to each case, and then using that rule to arrive at the substantive law that will govern the issue of pre-impact fear damages in each case. Before beginning our analysis, however, we dispose of some preliminary matters raised by the parties.

*Preliminary Matters*

Initially, the plaintiffs claim that the entire issue raised by this motion was disposed of in our last opinion, *Roselawn III.* That opinion held that Indiana law governed compensatory damages for Indiana residents, because Indiana had the most significant contacts on the issue of appropriate compensation for its own residents' injuries sustained in that state. The plaintiffs argue that, because damages for pre-impact fear and terror are compensation for one specific type of personal injury, *Roselawn III,* which is law of the case, is dispositive here.

 The Court agrees that pre-impact fear damages are merely one category of compensatory damages. It is hornbook law that pain and suffering, whether physical or otherwise, is an element of compensatory damages. We cannot see that this principle

is altered by the fact that the compensation at issue here is directed toward the decedent's estate, rather than toward his survivors in their own right—it is still compensatory in nature, and is subject to all the usual characteristics of compensatory damages. Thus, although this opinion is directed specifically toward damages for pre-impact fear, the same choice of law principles would also apply to compensatory damages for other personal injuries. In the same way, because *Roselawn III* identified the compensatory damages law governing all personal injuries sustained by Indiana residents, it necessarily included the damages recoverable by those residents for their pre-impact fear.

Nevertheless, our opinion in *Roselawn III* is not dispositive of the law to be applied to compensatory damages claimed by non-Indiana residents, for at least two reasons.[5] First, it did not apply any choice of law rule other than the *Restatement (Second) of Conflict of Laws'* "most significant relationship" test. Here, by contrast, the court must apply other rules to at least one of the Remaining Cases. Second, even the calculation of factors under the "most significant relationship" test was different there than it would be here: there, the place of injury and the domicile of all the decedents were the same state (Indiana); here, while the place of injury of course remains the same, none of these decedents were domiciled in Indiana. So, the same inquiry conducted then could produce a different answer this time.

 The plaintiffs also urge us to apply "judicial estoppel" to prevent the defendants from raising arguments contrary to those they advanced in support of their previous motion. Specifically, in moving for a ruling applying Indiana law to the Indiana plaintiffs, the defendants argued that the domicile of the plaintiffs was a key factor in the "most significant relationship" test, whereas now they discount the importance of that factor. While the defendants' present approach asks us to ignore many of their previous conten-

---

4. The "Airline Defendants": American Airlines, Inc.; Simmons Airlines, Inc.; AMR Corporation; AMR Eagle, Inc.; and AMR Leasing Corporation.

5. Of course, many of the same principles discussed in *Roselawn III* are relevant in our analysis here. Nevertheless, as we explain, *Roselawn III* does not foreclose the issues raised by the pending motion.

tions, however, the plaintiffs are equally guilty of this sin. They, too, now adopt positions contrary to the ones they advanced earlier. The Court certainly is not impressed by both sides' casual abandonment of their earlier arguments, nor has it forgotten those arguments. Nevertheless, the circumstances make the application of judicial estoppel inappropriate here. Judicial estoppel is an equitable doctrine, *DeGuiseppe v. Village of Bellwood,* 68 F.3d 187, 191 (7th Cir. 1995), so it should not be applied where the party claiming it is as much at fault as the claimed wrongdoer. For this reason, and because the issues presented in the two motions are not identical, we find that the application of judicial estoppel to parties' arguments is not warranted here.

 The final preliminary issue is the effect of the Warsaw Convention on the choice of law analysis in the cases brought on behalf of those passengers who were covered by the Convention.[6] In *Zicherman v. Korean Air Lines Co., Ltd.,* —— U.S. ——, ——, 116 S.Ct. 629, 634, 133 L.Ed.2d 596 (1996), the Supreme Court held that "the Convention does not affect the substantive questions of who may bring suit and what they may be compensated for." Rather, "compensable harm is to be determined by domestic law," *id.* at ——, 116 S.Ct. at 635, and a court must "apply the law that would govern in the absence of the Warsaw Convention." *Id.* at ——, 116 S.Ct. at 636. By implication, a court must also apply the choice of law rules that would govern in the absence of the Convention. *See, e.g., Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1482 (11th Cir. 1989) (Warsaw Convention preempts only those aspects of state law that are incompatible with it), *rev'd on other grounds,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); *Morgan v. United Air Lines, Inc.,* 750 F.Supp. 1046, 1052, 1054–55 (D.Colo.1990) (applying Colorado choice of law rules and substantive law to Warsaw Convention passenger's recovery for emotional distress).

In their briefs, the Warsaw Convention plaintiffs argued that, since the $75,000 damages cap set by the Convention may only be overcome by a showing of willful misconduct, the appropriate choice of law for all damages issues is the Texas, the state where the Airline Defendants are domiciled. That state, they claimed, is the state with the greatest interest in regulating the conduct of corporations residing within its borders. We reject this approach for several reasons. First, in the time since these plaintiffs filed their briefs, the Department of Transportation has announced new regulations raising the damage cap and shifting the burden of proof to defendants with regard to certain issues. The implementation of the new regulations has been delayed by protests from various airline groups. These recent developments cast into question the plaintiffs' argument. Under the new regulations, there are fewer differences between claims brought under the Convention and other passengers' claims. It follows that there is no special reason to focus on the place of the defendants' domicile for Convention claims. Second, adopting these plaintiffs' approach would require giving greater weight to the domicile of the defendants, but only in the Warsaw Convention cases. This unequal treatment would depart from the Supreme Court's injunction to "apply the law that would govern in the absence of the Warsaw Convention." *Zicherman,* —— U.S. at ——, 116 S.Ct. at 636. We note the Court's teaching that the Warsaw Convention acts as "nothing more than a pass-through," *id.,* and hold that it has no impact on the choice of law determination, to which we now turn.

## I. WHOSE CHOICE OF LAW RULES APPLY?

 The first step in a choice of law analysis is determining what jurisdiction's choice of law rules apply. For a federal court, the answer may vary depending on the source of the court's jurisdiction over the

---

**6.** By its terms, the Convention covers any air passenger engaged in a trip that ultimately involves international travel, even if the particular leg of the trip on which injury occurs is purely domestic. *See Stratis v. Eastern Air Lines, Inc.,* 682 F.2d 406, 410 (2d Cir.1982). Applying this definition, the following passengers whose cases are still pending were involved in international trips when Flight 4184 crashed: Cunningham, MacDonald, MacKenzie, Parmar, Robitaille and Snyder. *See* Resp.Br. of plaintiffs Begeny et al.; Resp.Br. of plaintiffs Dwyer et al.

case. Here, the Court's jurisdiction over the majority of the cases before it flows from the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611. *See In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994*, 96 F.3d 932, 942 (7th Cir. 1996). In two cases, however, jurisdiction is based on diversity of citizenship. We examine the choice of law rules applicable to these two groups of cases in turn.

## A. FSIA Cases

Only two federal appellate courts have decided the question of which choice of law rule is to be applied to FSIA cases, and they have taken opposite approaches. The Second Circuit, in *Barkanic v. General Admin. of Civil Aviation*, 923 F.2d 957, 960 (2d Cir.1991), looked to the choice of law rule of the forum state, applying New York's choice of law rules to an FSIA action based on the crash of a Chinese plane going from Nanjing to Beijing. The Ninth Circuit has taken a different approach, looking to federal common law for a choice of law rule in several cases brought under the FSIA. *See Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir.1992); *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir.1992); *Liu v. Republic of China*, 892 F.2d 1419, 1426 (9th Cir.1989); *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003 (9th Cir.1987). These cases hold that the federal common law choice of law rule is the "most significant relationship test" drawn from the *Restatement (Second) of Conflict of Laws* ("Second Restatement"). *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir.1991). Neither the Supreme Court nor our own appellate court, the Seventh Circuit, has addressed the issue of the proper choice of law rule in FSIA cases, or in federal question cases generally. *See UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 n. 8, 86 S.Ct. 1107, 1113 n. 8, 16 L.Ed.2d 192 (1966) (deciding which limitations period to apply in a federal action brought under § 301 of the Labor Management Relation Act, the Court noted that it had "no occasion to consider whether . . . [in a federal question case] a choice of law should be made in accord with

the principle of *Klaxon* . . . or by operation of a different federal conflict of laws rule.").

We need not resolve this issue now, however, as the parties currently before us agree that both approaches would yield the same result. If we were to adopt the Ninth Circuit's approach and apply the federal choice of law rule, we would look to the Second Restatement. If instead we followed the Second Circuit's approach of looking to the forum state for its choice of law rule we would, under *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) and *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964), look to the forum states where these actions were originally filed: Illinois, Texas, Oklahoma, Florida, and New York. The first four of these states all apply the Second Restatement test. *See Ingersoll v. Klein*, 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970) (Illinois law); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979) (Texas law); *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla.1974) (Oklahoma law); *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980) (Florida law). The remaining state, New York, applies a complex type of governmental interest analysis known as the "*Neumeier* rules," after *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). The parties agree that, in this case, applying the *Neumeier* rules would yield the same result as applying the Second Restatement test.

Thus, whether we follow the Second or Ninth Circuit's approach regarding the appropriate choice of law rule for FSIA cases, that rule is the same: the Second Restatement test or its functional equivalent. As the parties are all of the opinion that any of these rules would produce the same answer as applying the Second Restatement, we will apply the Second Restatement to all cases in which our jurisdiction is based on the FSIA.

## B. Diversity Cases

In only two of the Remaining Cases, *Anglemyer v. AMR Corp.* (No. 95 C 4959) and *Shellberg v. AMR Corp.* (No. 95 C 4957), is jurisdiction based on diversity of citizenship. In diversity cases, choice of law

issues must be resolved by applying the choice of law rules of the forum state. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) (federal court exercising diversity jurisdiction must apply the substantive law of the forum state); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) (federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state). Where, as here, the cases were transferred from the court in which they were originally filed, the original transferor forum state of each case supplies the choice of law rules. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964); *Air Crash Chicago,* 644 F.2d at 610 (7th Cir.1981).

### Anglemyer: *North Carolina's Approach*

The diversity-based *Anglemyer* case was originally filed in a federal court in North Carolina. Thus, this Court must apply North Carolina choice of law rules to that case. The defendants say that North Carolina holds to the common law rule of *lex loci delicti commissi* ("the law of the place where the wrong took place") for issues relating to personal injury claims. They cite *Boudreau v. Baughman,* 322 N.C. 331, 368 S.E.2d 849, 853–54 (1988) for this proposition. Anglemyer denies that North Carolina is a pure *lex loci delicti* state. He cites *Braxton v. Anco Elec., Inc.,* 330 N.C. 124, 409 S.E.2d 914 (1991) for the proposition that North Carolina choice of law rules allow a court to depart from the *lex loci delicti* approach and apply the "most significant relationship" test upon occasion.

▆▆▆ After reviewing North Carolina law, as expressed by both the courts of that state and the local federal courts, we conclude that the defendants have the better of this argument. In *Boudreau v. Baughman,* a decision issued less than ten years ago, the supreme court of North Carolina firmly rejected the application of the "most significant relationship" test for personal injury claims, and hewed instead to *lex loci delicti. Id.,* 368 S.E.2d at 854 ("This Court has con-

sistently adhered to the *lex loci* rule in tort actions."). The cases addressing this issue since that time show no lessening of this commitment to *lex loci delicti* in personal injury actions. *See, e.g., Stokes v. Southeast Hotel Properties, Ltd.,* 877 F.Supp. 986, 995 (W.D.N.C.1994) ("the North Carolina choice of law rule is to apply the *lex loci delicti* to all substantive questions" for tort claims). The only question requiring recent consideration is the rule to be applied to claims that have elements of both tort and contract. *See Mahoney v. Ronnie's Road Serv.,* 122 N.C.App. 150, 468 S.E.2d 279, 281–82 (1996) ("most significant relationship" test applied to breach of warranty claim); *United Dominion Indus., Inc. v. Overhead Door Corp.,* 762 F.Supp. 126, 129 (W.D.N.C.1991) (applying *lex loci delicti* to claim of unfair and deceptive trade practices, and noting that "Boudreau is an important case in understanding North Carolina law ... and demonstrates a commitment in North Carolina to the *lex loci* test.").

*Braxton v. Anco Electric* is not to the contrary, for several reasons. First, that 1991 North Carolina supreme court decision emphatically reaffirmed that, "We do not hesitate in holding that as to the tort law controlling the rights of the litigants ... the long-established doctrine of *lex loci delicti commissi* applies." *Id.,* 409 S.E.2d at 915. The law of the place where the plaintiff was injured (Virginia) thus controlled on those issues. The court then went on to hold that, on the separate issue of whether the plaintiff could sue a third party after recovering workers' compensation from his employer, North Carolina law, which did not bar the suit, should be applied. *Id.* (Virginia law would have barred the third party suit.) In so holding, the court emphasized the important public policies behind North Carolina's workers' compensation scheme. *Id.* at 916. The court also justified its decision on the grounds that the majority of the plaintiff's contacts were with North Carolina, not Virginia, and that the same result would be reached by applying the doctrine of *renvoi.*[7] *Id.* at 916–17.

---

7. The Court notes that although the *Braxton* court referred to the doctrine of *renvoi* as yet

another support for the result it reached, it by no means held, as Anglemyer suggests, that "the

This Court can find no cases in which *Braxton* has been applied beyond the facts of that case, which focus on North Carolina's workers' compensation scheme. Nor are there any cases indicating that North Carolina has abandoned the *lex loci delicti* rule in personal injury actions decided after *Braxton*. Accordingly, we find that North Carolina's *lex loci delicti* choice of law rule applies to Anglemyer's diversity-based action.[8]

### Shellberg: *Oklahoma Choice of Law Rule*

 The case *Shellberg v. AMR Corp.* (No. 95 C 4957) was originally filed in Oklahoma, so we must apply Oklahoma choice of law rules to it. As noted above, Oklahoma applies the "most significant relationship" test set out in the Second Restatement. *See Brickner v. Gooden,* 525 P.2d 632, 637 (Okla. 1974). Accordingly, the "most significant relationship" test applies to the diversity-based *Shellberg* case.[9]

### C. *Indiana Choice of Law Rules Do Not Apply*

The defendants' briefs refer in passing to Indiana Code § 8–21–4–6, a choice of law rule which provides in part that "[a]ll offenses, torts, and other wrongs committed by or against an aeronaut or passenger while in flight over Indiana shall be governed by Indiana laws." The statute appears to have been enacted in 1927 as part of Indiana's adoption of the Uniform Aeronautics Act. That uniform act was withdrawn by the National Conference on Uniform State Laws in 1943, but its provisions remain in effect in many states. *See Air Wisconsin, Inc. v. North Cent. Airlines, Inc.,* 98 Wis.2d 301,

321–23 & n. 13, 296 N.W.2d 749, 758–59 & n. 13 (1980) (discussing a similar Wisconsin statute); *Heidemann v. Rohl,* 86 S.D. 250, 194 N.W.2d 164, 166 (1972) (similar South Dakota statute).[10]

The defendants have not directed us to any authority demonstrating that this statute has ever been applied to an Indiana air crash, nor are we able to discover any such cases. Instead, at least two choice of law decisions concerning air crashes in Indiana omit any reference to § 8–21–4–6. *See Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400, 403 (7th Cir.1974) (deciding to apply federal common law to contribution and indemnity issues in Indiana aircrash case); *Emmart v. Piper Aircraft Corp.,* 659 F.Supp. 843, 843 (S.D.Fla.1987) (using most significant relationship test in deciding to apply Indiana law).

More important, the defendants have not cited any support for the proposition that Indiana's choice of law rule may be applied to any of the Remaining Cases. As noted above, North Carolina and Oklahoma are the only states whose choice of law rules may be considered in the diversity cases, while the choice of law rule for the FSIA cases is drawn from federal common law. In no case is this Court required or even permitted to look to Indiana for a choice of law rule. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(1). Thus, for this Court to adopt the choice of Indiana law specified in § 8–21–4–6 would be improper, and we reject the defendants' invitation to do so. North Carolina's *lex loci delicti* rule will be applied to the diversity-based *Anglemyer* case, while the

---

doctrine of *lex loci* must be accompanied by the application of the doctrine of *renvoi.*" We have found no case suggesting that the courts of North Carolina normally apply the doctrine of *renvoi* in their choice of law determinations. Nor is the application of *renvoi* recommended in most choice of law determinations. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 8, comment b.

**8.** As to Anglemyer's other case (No. 95 C 6923), our jurisdiction there is based upon the FSIA, and thus the analysis in part I.A. of this Opinion identifies the law to be applied in that case. Although it is somewhat awkward for the same plaintiff's claims against two sets of defendants to be governed by two different choice of law rules, that is a function of the plaintiff's choice of

forum for filing the cases, not a circumstance created by this Court.

**9.** As with the *Anglemyer* cases, plaintiff Shellberg has also filed a separate action against different defendants, for which this Court's jurisdiction is based upon the FSIA (No. 95 C 6891). Our analysis of the choice of law rules applicable to FSIA cases in part I.A. of this Opinion demonstrates that the "most significant relationship" test applies to both *Shellberg* cases.

**10.** The corresponding provisions of Wisconsin's and South Dakota's aeronautics statutes may be found at WIS.STAT. § 114.07 (1996) and S.D. CODIFIED LAWS § 50–13–8 (1996).

Second Restatement's "most significant relationship" test will determine the substantive law to be applied to all the other Remaining Cases.

## II. WHOSE SUBSTANTIVE LAW APPLIES?

Having identified the proper choice of law rules, we now proceed to apply them to discover the substantive law that will govern on the issue of compensatory damages for pre-impact fear.

### A. "Most Significant Relationship" Cases

The Second Restatement "most significant relationship" test applies to almost all of the Remaining Cases. As discussed above, that test is applicable to all of the cases in which jurisdiction is based on the FSIA. The test also governs *Shellberg v. AMR Corp.*, No. 95 C 4957, the diversity-based case in which the choice of law rule of the original forum state (Oklahoma) is the most significant relationship test.

As we noted in *Roselawn III*, the Second Restatement requires that four factors must be weighed in determining the state having the most significant relationship with a tort claim: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile of the parties (in the case of corporations, this would include the place of incorporation and principal place of business); and (4) the place where the relationship between the parties is centered, if that can be determined. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2). The defendants argue that the place of injury is entitled to presumptive favor for all aspects of personal injury claims, citing § 146 of the Restatement. The plaintiffs generally argue that, for issues of compensatory damages, the interest of the domicile of the injured person is paramount. A few plaintiffs contend that either the law of the defendants' domicile (specifically, Texas) or federal common law should apply.

Section 145(2) of the Restatement expressly provides that the relative importance of the factors it sets out can vary, depending on the particular issue at stake. *Id.* § 145(2). For instance, in the area of punitive damages, many authorities suggest that the place of the misconduct and the defendants' domiciles have the greatest interest in balancing the deterrence of wrongdoing with the costs of imposing high damages upon resident business defendants. *See In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, on Nov. 15, 1987,* 720 F.Supp. 1445, 1453 (D.Colo.1988); *see also Air Crash Chicago,* 644 F.2d 594, 613 (7th Cir.1981).

In the area of compensatory damages, by contrast, much of the existing authority supports the application of the law of the injured person's domicile, on the ground that that state has the greatest interest in ensuring that its residents are appropriately compensated for their injuries. *See Air Crash Chicago,* 644 F.2d at 613 (the plaintiffs' domiciliary states have "legitimate interests" in "assuring that the plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries"); *Burgio v. McDonnell Douglas, Inc.,* 747 F.Supp. 865, 872 (E.D.N.Y.1990) (as domicile of the decedent and plaintiff, New York had a more substantial interest in the compensation awarded than Louisiana, which had little connection beyond being the site of the crash); *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987,* 720 F.Supp. 1505, 1528 (D.Colo.1989) (by agreement, issues of compensatory damages were governed by the law of each plaintiff's domicile because "the domicile state has the most significant interest in placing a value on the injuries suffered"), *rev'd on other grounds sub nom. Johnson v. Continental Airlines Corp.,* 964 F.2d 1059 (10th Cir.1992); *Emmart v. Piper Aircraft Corp.,* 659 F.Supp. 843, 846–47 (S.D.Fla. 1987) (as the state in which the decedents had resided, Indiana had the greatest interest with respect to the nature and extent of the compensatory relief afforded the decedents' beneficiaries); *In re Air Crash Disaster at Boston, Massachusetts, on July 31, 1973,* 399 F.Supp. 1106, 1112–14, 1118–19 (D.Mass.1975) (applying the choice of law rules of the original transferor states; where

those rules involved an interest-balancing test, the domiciles of the decedents and most of the plaintiffs had the most substantial interest in having their laws applied to the issue of compensatory damages); *Bryant v. Silverman*, 146 Ariz. 41, 703 P.2d 1190, 1194 (1985) (under most significant relationship test, domicile of the decedent carried great weight; the place of injury did not have a strong interest in compensation where the decedent was a non-resident). "In sum, the most sensible application of the Restatement's standards is to apply the law of the injured person's domicile to all issues concerning the availability and measurement of compensatory damages." John B. Austin, *A General Framework for Analyzing Choice-of-Law Problems in Air Crash Litigation*, 58 J.Air L. & Com. 909, 973 (1993) (discussing the application of the factors listed in Second Restatement § 6 to issues of compensatory damages in air crash cases).

In *Roselawn III*, this Court followed this approach, treating the domicile of the plaintiffs and decedents as the paramount factor in determining the substantive law to be applied to compensatory damages available in the wrongful death and survival actions at issue there. Although in that decision the domicile of the plaintiffs and decedents (Indiana) was the same as the place of injury, our opinion made it clear that we gave more weight to the former factor than the latter. *See Roselawn III*, 926 F.Supp. at 743, 745 (the place of the crash was somewhat, although not wholly, fortuitous, and so the place of injury did not "deserve the full presumptive force to which it [was] due" under Second Restatement § 146; the domiciliary state's "interest in determining and providing for the appropriate recovery for survivors and estates of ... decedents" was a more important factor).

In *Roselawn III* we acknowledged that today's international economy results in millions of miles being logged by today's air passengers. "Simply put, today's air travelers could be seen to have a relationship with numerous states in their air travel but their 'most significant relationship' for compensatory damage purposes will usually be with their own state of domicile." *Id.* at 746.

Upon re-weighing the importance of the various state contacts relevant to the choice of law motion currently before us, we find no reason to depart from our previous focus in *Roselawn III* on the domicile of the injured persons.

The language of § 146 of the Second Restatement does not require a different result. That section prescribes that the law of the place of injury should be applied to "determine[ ] the rights and liabilities of the parties" in a personal injury claim, "unless, *with respect to the particular issue,* some other state has a more significant relationship under the principles stated in § 6." Second Restatement § 146 (emphasis added). Section 146 thus expressly recognizes that some other state may have a more compelling interest in the action as to a particular narrow issue. Comment *c* of this section recommends that "[t]he extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue," and refers the reader to § 145. The comments to § 145 explicitly note that in some situations, "the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue...." Second Restatement § 145, comment *e*.

This Court found in *Roselawn III* that the fact that the injury occurred in Indiana was somewhat, although not entirely, fortuitous. *Roselawn III*, 926 F.Supp. at 743. This is even more true where, as in the Remaining Cases, none of the injured persons was an Indiana resident. On the specific issue of compensation for the injuries sustained, the place of injury has relatively little interest in the relief afforded non-residents. *See Bryant v. Silverman*, 146 Ariz. 41, 703 P.2d 1190, 1194 (1985). Indeed, the fact that all of the decedents and defendants are nonresidents itself makes the place of injury "fortuitous," and renders its interest attenuated. *See Forty-Eight Insulations, Inc. v. Johns–*

*Manville Prods. Corp.,* 472 F.Supp. 385, 392 (N.D.Ill.1979).

■ A state's laws regarding damages generally rest on two sometimes competing goals: the compensation of resident plaintiffs' injuries, and the protection of resident defendants from excessive claims. *See Chicago Air Crash,* 644 F.2d at 610; *Burke v. J.B. Hunt Transp., Inc.,* No. 91 C 3459, 1992 WL 137153 at *4 (N.D.Ill. June 10, 1992) ("Wrongful death damages ... reflect a state's balance between the need to compensate and the desire to protect resident defendants"). Here, neither of these two principles is involved: none of the decedents nor defendants before us on this motion are residents of Indiana. A state where an injury occurs has very little interest in insuring the compensation of the victim or protecting the tortfeasor when neither one is a state resident. *See Burke,* 1992 WL 137153 at *4 (where neither plaintiff nor defendant was an Indiana resident, Indiana's interests as the place of injury were subordinate to the interests of the plaintiff's domicile). *Cf. Maroon v. Indiana,* 411 N.E.2d 404, 410–412 (Ind.Ct. App.1980) (mere fact that Illinois laws regarding wrongful death and survival actions are more liberal than those of Indiana does not demonstrate any public policy of Indiana that would prevent the Illinois laws from being applied).

The interest of the place of injury is in ensuring that persons who cause injury in its state do not escape liability. *See* SECOND RESTATEMENT § 145, comment *e.* The issue presently before the Court concerns damages, not liability, however, and there is no indication that applying the compensatory damages law of a state other than Indiana would allow the defendants to "escape liability." The Court finds that with regard to compensatory damages, Indiana's interest must yield to the interest of the injured person's domiciliary state in ensuring that the wrong done to the injured person is appropriately compensated.

We likewise reject the request of some parties to apply the law of Texas and/or "federal common law" to this issue. Texas has no interest in the compensation granted to any injured person other than its own residents, or in seeing that liberal compensatory damages are imposed upon defendants whose principal place of business is in Texas. As for federal common law, the only reason cited in favor of creating and applying a federal common law of pre-impact fear damages is uniformity. This bare desire to achieve an identical result in every case is insufficient to override the interest of each injured person's domiciliary state. As our appellate court has noted, "achievement of a uniform treatment of plaintiffs and defendants through federal law is a task for Congress, not a federal court." *Air Crash Chicago,* 644 F.2d at 637.

Applying the law of the injured person's domicile to issues of compensatory damages advances the principles of predictability and the protection of justified expectations set out in Second Restatement § 6, in that it respects the decedent's deliberate choice to make his or her home in a state and be governed by the laws of that state. Especially with respect to the claims of a decedent's estate, which are traditionally governed by the laws of the decedent's domicile,[11] this deliberate decision to submit the daily affairs of life to the laws of a particular state may create justifiable expectations worthy of protection.

The § 6 principle of serving the needs of the interstate system is also upheld by applying the law of the injured person's domicile. As in *Roselawn III,* we agree with the reasoning of the court in *Gordon v. Eastern Air Lines, Inc.,* 391 F.Supp. 31 (S.D.N.Y.1975), which held that applying the law of the decedent's domicile to the issue of compensatory damages best served the needs of the interstate commerce system. "[T]he failure to apply [the domicile's] law ... would 'impair

11. *See Doetsch v. Doetsch,* 312 F.2d 323, 328 (7th Cir.1963) ("The decedent's domicile is a traditional point of reference in the solution of many problems involving decedent's estates."); UNIF. PROBATE CODE § 3–201 (estate is to be administered where the decedent was domiciled); § 3–408 (in matters pertaining to the administration of a decedent's estate, the binding effect of another state's order depends on whether the order includes a finding that the other state was the decedent's domicile).

... the smooth working of the multi-state system (and) produce great uncertainty for litigants by sanctioning forum shopping ... thereby allowing a party to select a forum which could give him a larger recovery than the court of his own domicile.'" *Id.* at 34 (quoting *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 70–71, 286 N.E.2d 454, 458 (1972)).

Because significant law supports the application of the law of the injured person's domicile to the issue of pre-impact fear damages, and because the alternative states proposed by the parties have little or no interest in this particular issue, the Court finds that the law of the injured person's domicile must be applied to claims for compensatory damages for pre-impact fear for all cases in which the choice of law rule is the Second Restatement's "most significant relationship" test.[12]

*B. Lex Loci Delicti Case: Anglemyer*

The only case in which a choice of law rule other than the "most significant relationship" test applies is the diversity-based case *Anglemyer v. AMR Corp.*, No. 95 C 4959, to which the North Carolina choice of law rule *lex loci delicti* applies. That rule looks to the place of the tort. The Fourth Circuit has explained how that place is to be identified:

> In determining the place of the tort, North Carolina courts apply the generally accepted interpretation of the *lex loci* rule that the tort is deemed to have occurred where the last event takes place, that is necessary to render the actor liable. Injury being the last element of a tort, [the] North Carolina rule, in a nutshell, is the law of the place of injury.

*Santana, Inc. v. Levi Strauss & Co.*, 674 F.2d 269, 272 (4th Cir.1982). There can be no serious dispute that Indiana is the place where the specific "injury" at issue here—the passengers' pre-impact fear and terror, as well as all their personal injuries and their deaths—took place. As noted in *Roselawn III*, Flight 4184 crashed in Indiana, having flown primarily if not solely in Indiana airspace after leaving Indianapolis. Thus, Indiana substantive law will govern plaintiff Anglemyer's claims in case No. 95 C 4959.

CONCLUSION

The Court grants in part and denies in part the defendants' motion for a choice of law ruling applying Indiana law to the issue of pre-impact fear damages [229–1]. The motion is granted only as to the case *Anglemyer v. AMR Corp.*, No. 95 C 4959, and is denied as to all other cases. As to those cases,[13] the law of the injured person's domicile will govern the availability of pre-impact fear damages. As to the case *Wright v. AMR Corp.*, No. 95 C 1018, the Court holds that its previous ruling in *Roselawn III* applies, and that Indiana law governs all compensatory damages issues in that case.

---

12. The parties raised numerous arguments in support of their positions, only some of which have been addressed here. The Court has considered all of the parties' arguments, but found that only the ones addressed herein merited discussion.

13. See note 2, *supra,* for a list of other cases to which this Memorandum Order and Opinion applies.