United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 3, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 02-40569

H E STEVENSON, ET AL,

Plaintiffs,

H E STEVENSON, DIANNA STEVENSON, AND SHARON HARPER,

Plaintiffs-Appellees,

VERSUS

E I DUPONT DE NEMOURS AND COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas, Victoria

Before DeMOSS and STEWART, Circuit Judges, and FALLON, District

Judge.[1]

DeMOSS, Circuit Judge:

    Before the Court is the appeal of Defendant-Appellant E. I.

_____

    [1]District Judge of the Eastern District of Louisiana,
sitting by designation.

1

DuPont De Nemours & Co. ("DuPont") from a jury verdict finding the defendants liable for trespass on the Plaintiffs-Appellees' property. The Plaintiffs-Appellees in this case are H. E. Stevenson, Dianna Stevenson, and Sharon Harper (referred to collectively as "Plaintiffs"). Carried with DuPont's appeal is the Plaintiffs' motion for recovery of damages and costs under F.R.A.P. 38. The Plaintiffs brought suit against DuPont alleging that its Victoria, Texas, plant emits heavy metal particulates, which contaminated the Plaintiffs' properties located nearby and affected their health as well as the health of their animals. Their theories of recovery included negligence, nuisance, and trespass. Following a six-day jury trial, the jury found for the Plaintiffs only on the trespass theory and awarded the Stevensons $168,000 and Harper $96,000 in damages for the diminished value of their property.

DuPont appeals challenging the sufficiency of the evidence of the jury verdict. It contends first that, as a matter of law, the Plaintiffs cannot recover for trespass based on contamination by airborne particulates. Second, appellant asserts that the Plaintiffs' evidence of causation was insufficient to show that DuPont's factory emissions actually contaminated the Plaintiffs' properties. Finally, it alleges that the Plaintiffs presented insufficient evidence regarding damages for the diminution of property values.

Plaintiffs, in response, have moved for damages and costs as

2

a result of a frivolous appeal. Specifically, the Plaintiffs contend that DuPont's challenges regarding the causation evidence are actually *Daubert* challenges regarding the admissibility of the evidence, and, because the defendant waived its *Daubert* challenge during a hearing on the matter, this Court cannot now review these findings. Second, Plaintiffs argue that DuPont's point of error on evidence of a temporary trespass as opposed to permanent trespass was waived when DuPont failed to request that the Court submit such an issue to the jury.

For the reasons set forth below, we AFFIRM the district court's denial of DuPont's motion for judgment as a matter of law. We REVERSE the jury's award for damages, and REMAND for a new trial on damages.

## BACKGROUND & PROCEDURAL HISTORY

H. E. and Dianna Stevenson purchased 28 acres of land in Victoria, Texas in 1970 or 1971. Mr. Stevenson built a house on the property, and the family moved into that house in 1976. Mr. Stevenson used the property primarily to raise race horses. Sharon Harper purchased 16 acres of land approximately a block to block-and-a-half from the Stevensons' property in 1982. She resides in a house on the property, along with her daughter, who lives in a separate house on the property. During her time on the property, she raised cows, horses, goats, chickens, and various other animals.

3

DuPont opened a petrochemical plant in Victoria, Texas, in 1951. The plant is approximately one and one-half miles from the Plaintiffs' properties, which are the closest lands to the plant. The plant produces "intermediate products" for shipping to offsite customers. Throughout its operation, the plant has emitted heavy metals as a result of burning hazardous waste. The emissions from the factory contain barium, cerium, chromium, copper, lead, manganese, and zinc.

In January 2001, the Plaintiffs filed suit against DuPont for contamination of their person, property, and livestock. Their theories of recovery were negligence, nuisance, and trespass. During the trial,[2] James Miller, DuPont's environmental consultant, testified as the employee most knowledgeable about the air emissions from the stacks. He admitted that all air dispersion reports, including DuPont's, showed that the Plaintiffs' properties were within the maximum level of impact for emissions from DuPont's factory. This dispersion modeling showed that the emissions were most heavily concentrated in the air over the Plaintiffs' properties.

Michael Stringer was offered as the Plaintiff's expert on soil sampling. He collected samples from the Stevensons' property,

---

[2]Various testimony was heard during the trial regarding the health effects of the contamination on the Plaintiffs and their animals. However, the jury found in favor of the defendant on these issues, and this part of the verdict is not before this Court on appeal. Accordingly, discussion of this testimony is omitted.

4

including a sample of dirt from their roof, and he also collected soil samples from DuPont's plant and from a background source about 25 to 30 miles from the plant. He testified that concentrations of heavy metallic particles were higher on the Stevensons' property than on the DuPont's property and much higher than on the background property. Further, the types of metals found on the ground matched those emitted by DuPont. Dr. Edwin Smith also testified for the Plaintiffs regarding soil and roof samples taken from the Stevensons' property. He opined that the metallic concentrations on the roof were higher than the concentrations on the ground, indicating that the cause of the contamination was airborne in nature. No soil samples were taken from Mrs. Harper's property, and Stringer testified that he did not analyze the samples collected on her roof because it was metallic and would contain metallic particles anyway.

Mr. Stevenson testified that he had continuous upkeep problems at his house because the paint would keep peeling off, and his window screens continually corroded. Sharon Harper testified that she had continuous rust problems on her roof and pipe fence, with the worst corrosion being on the side facing the DuPont factory.

To prove damages, the Plaintiffs offered the testimony of John Fox, a real estate appraiser. Fox based his opinion solely on a letter provided by the executive director of the Port of Victoria Industrial Park regarding the range of prices available for land in the same area as the Plaintiffs. The letter stated that property

5

in the area sold for approximately $10,000 to $15,000 per acre. Fox then "placed that same range on the Stevenson property, which would be 10 to 15,000 per acre." He then applied the same range to value Mrs. Harper's property. The defendant's expert conducted an appraisal of the properties in this case and concluded that the Fox's appraisal should be discounted approximately 40 percent.

At the conclusion of the trial, the jury returned a partial verdict in the Plaintiffs' favor. The jury found that DuPont was not negligent, and that its actions did not constitute a nuisance. The jury did find that a trespass had occurred on the Plaintiffs' lands, but did not find that the trespass was willful or wanton. The jury further denied recovery for the Plaintiffs' physical pain and mental anguish as well as for injury to their animals, but the jury did award the Stevensons $168,000 and Harper $96,000 for "the difference in the market value of the property . . . immediately before and after the damage . . . proximately caused by DuPont's operation of the Victoria Plant."

The District Court entered judgment in favor of the Stevensons and Harper in these amounts. DuPont promptly moved for a new trial and judgment as a matter of law, and the District Court denied the motions. DuPont then timely appealed to this Court to review the sufficiency of the evidence.

DISCUSSION

**I.  Whether the district court erred in denying DuPont's motion for judgment as a matter of law.**

This Circuit reviews *de novo* the district court's ruling on a motion for judgment as a matter of law.  *See* ***Cozzo v. Tangipahoa Parish Council-President Government,*** 279 F.3d 273, 280 (5th Cir. 2002). However, when an action is tried by a jury, such a motion is a challenge to the legal sufficiency of the evidence supporting the jury's verdict.  ***Brown v. Bryan County, OK,*** 219 F.3d 450, 456 (5th Cir. 2000).  Accordingly, the Court should consider the evidence "drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."  ***Id.***  Furthermore, the Court's "standard of review with respect to a jury verdict is especially deferential." ***Id.***  Thus, reversal is proper "only if no reasonable jury could have arrived at the verdict." ***Snyder v. Trepagnier,*** 142 F.3d 791, 795 (5th Cir. 1998).

DuPont argues that a trespass traditionally requires a direct and physical invasion by tangible matter onto another person's property, while a cause of action for nuisance requires a showing of indirect invasion and intangible intrusion.  DuPont relies on ***Adams v. Cleveland-Cliffs Iron Co.,*** 602 N.W.2d 215 (Mich. Ct. App. 1999), to support its claims that the intrusion of airborne particles onto Plaintiff's land does not constitute a trespass.

7

***Adams,*** a Michigan case, declined to follow recent Michigan case law expanding the tort of trespass and held that the invasion of dust particles was not sufficient evidence of trespass because these particles do not present a "significant physical intrusion." ***Id.*** at 223. Defendant contends that this traditional view of trespass law would preclude Plaintiffs' recovery.

The current case law that ***Adams*** rejected in reaching its decision does hold that a trespass occurs when particulate matter is present on another's property; however, those cases also modify "traditional" trespass law by requiring "substantial damage to the res." ***J. H. Borland v. Sanders Lead Co.,*** 369 So. 2d 523, 530 (Ala. 1979). *See also* ***Bradley v. American Smelting & Refining Co.,*** 709 P.2d 782, 791 (Wash. 1985) (adopting the holding of *Borland* requiring substantial damage for trespass caused by airborne particulates). DuPont relies on ***Borland,*** an Alabama case, and ***Bradley,*** a Washington state case, to suggest the modern view of trespass law would support the cases of the Stevensons and Harper, but would require a showing of substantial damage.

DuPont admits that Texas courts have not decided this particular issue. However, it contends that under either theory, the Plaintiffs cannot recover in this case. Under the old theory, the injury must be direct and tangible, which precludes recovery because the airborne particles are neither direct nor tangible. Further, under the new theory, the Plaintiffs have failed to

8

establish the substantial damage requirement. Significantly, however, the defendant cannot point to any Texas case specifically adopting these requirements. DuPont argues that Texas courts have adopted the substantial damage requirement, but the cases it relies on in support of that contention involved situations in which the state had set the minimum levels of damage necessary to maintain a cause of action in trespass. *See, e.g.*, ***Taco Cabana, Inc. v. Exxon Corp.,*** 5 S.W.3d 773, 780 (Tex. Ct. App.-San Antonio 1999, writ denied) (holding that because the Plaintiff did not prove contamination above state action levels, recovery for trespass was not possible); ***Z.A.O., Inc. v. Yarbrough Drive Center Joint Venture,*** 50 S.W.3d 531, 543-44 (Tex. Ct. App.-El Paso 2001, no writ) (same). In this case, there is no assertion that Texas law sets the required levels of contamination necessary for recovery by the Plaintiffs. Thus, the Plaintiffs were not required to show substantial damage to their property.

DuPont's arguments also fail because this Court is required to apply the law of Texas as it currently stands. The Texas Supreme Court set forth the following definition of trespass with its decision in ***Railroad Comm'n of Texas v. Manziel,*** 361 S.W.2d 560 (Tex. 1962): "To constitute trespass there must be some physical entry upon the land by some 'thing.'" ***Id.*** at 567. Research shows no Texas cases adopting a "direct and tangible" requirement to prove trespass. Because the only showing necessary is entry over

9

land by some "thing," Texas law would permit recovery for airborne particulates.

**II. Whether sufficient evidence was presented to the jury to prove that the emissions from DuPont deposited heavy metal particulates on the Plaintiffs' properties.**

DuPont first attacks the methodology used by Plaintiffs' air modeling expert, Johnny Sanders. It contends that his methods were not sufficiently reliable to determine that the concentrations of metals would move from DuPont's property to the Plaintiffs' properties. DuPont cites several examples of his testimony to show that it is unreliable. First, it points out that Sanders did not do any depositional modeling, which would have confirmed whether the particles actually landed on the Plaintiffs' properties. Second, DuPont asserts that Sanders used improper data in reaching his calculations and that he disregarded the actual data he was given by DuPont. Third, Sanders' testimony had mathematical errors, which skewed his analysis.

DuPont also contends that Plaintiffs' experts Stringer and Smith were not reliable when they testified regarding the presence of heavy metals on the Plaintiffs' properties. First, DuPont points out that Dr. Smith's analysis of the soil sample was improper because it was delivered to him by the Stevensons, who did not create a chain of custody document for the sample. Second, DuPont argues that Dr. Smith failed to inquire or determine whether the metals could have come from any alternative sources. Finally,

10

DuPont points out that Stringer only tested two soil samples from the Stevensons' property.

Plaintiffs contend first that DuPont lost its right to challenge the reliability of its expert testimony when it waived its *Daubert* challenges during a hearing on the admissibility of expert testimony. Plaintiffs characterize defendant's arguments as challenges to the admissibility of the evidence disguised as challenges to the sufficiency of the evidence. Its arguments, however, on this point are not persuasive. Although DuPont lost the right to challenge the admissibility of the evidence, it did not lose the right to challenge the sufficiency of the evidence.

In ***In re Joint Eastern & Southern District Asbestos Litigation,*** 52 F.3d 1124 (2d Cir. 1995), the Second Circuit thoroughly examined the interaction between the standards enunciated in ***Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993),*** and the sufficiency of the evidence. Plaintiffs in the asbestos litigation sought damages for colon cancer allegedly caused by asbestos products manufactured by the defendants. The jury found in favor of the Plaintiff, and the defendant promptly moved for judgment as a matter of law. The district court granted the motion and set aside the jury verdict finding that the Plaintiff's epidemiological evidence was insufficient to support a causal connection between asbestos and colon cancer.

The Second Circuit reversed finding that the district court

11

had improperly taken the case away from the jury and overstepped its role as contemplated by *Daubert.* *Id.* at 1126. The court noted that a sufficiency inquiry asks whether the collective weight of a litigant's evidence is adequate to present a jury question. *Id.* at 1132. Further, the court found that *Daubert* did not change the traditional role of a sufficiency inquiry, but only expanded the trial court's role regarding the admissibility of expert evidence. *Id.* The court quoted the following passage from *Daubert* to illustrate the proper method of attacking questionable-but-admissible expert evidence: "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof'" are the traditional and appropriate means of attacking shaky but admissible evidence. *Id.* at 1132 (quoting *Daubert,* 509 U.S. at 599).

Following these guidelines, this Court may review the record to determine the sufficiency of the evidence; the defendant's waiver of any challenges to the admissibility of the expert testimony does not preclude such a sufficiency review by this Court. Defendant properly preserved its rights to challenge the sufficiency of the evidence when it moved for a judgment as a matter of law in the trial court. However, as we noted above, this Court must draw all inferences from the evidence in favor of the Plaintiffs. *Brown,* 219 F.3d at 456.

As noted above, the testimony of all air modeling experts in

12

this case, including DuPont's expert, James Miller, showed that the Plaintiffs' properties were in the area showing the heaviest concentration of DuPont's emissions. Thus, the defendant's arguments regarding discrepancies or improper modeling techniques in Sanders' opinions and testimony is not persuasive. His testimony is supported by that of the other experts in the case.

DuPont correctly points out that the air modeling testimony only showed that the airborne particulates were in the air over Plaintiffs' properties, not that it actually landed on the ground. However, the testimony of Dr. Smith and Mr. Stringer established that point. Their testimony showed higher-than-normal levels of metallic particulates on the Plaintiffs' property; the metals found on Plaintiffs' land also matched the metals known to be emitted by DuPont's factory. Further, Dr. Smith opined that because the concentrations on the Stevensons' roof were higher than the concentrations on the ground, the contamination was airborne in origin. A jury could reasonably infer that the particles on the ground were from DuPont's factory because the Stevensons' property was in the area most heavily covered by the airborne particulates.

DuPont argues that Dr. Smith's testimony was improper because he analyzed only a single sample, and no chain of custody was created. DuPont never objected to the admission of this testimony, and the record shows that DuPont's counsel adequately cross-examined Dr. Smith on his techniques. DuPont's challenges go to the weight of the evidence, and this Court should defer to the

13

jury's findings that this testimony indicated the particular result.

DuPont also asserts that the Plaintiffs failed to present any evidence showing the background levels of heavy metal particulates in the air before the wind reached the DuPont factory. Further, it contends that the Plaintiffs' experts started with the conclusion that the contamination came from the DuPont factory and crafted their testimony to justify that. This argument fails again, however, because DuPont's own evidence showed that its emissions were most heavily concentrated over the Plaintiffs' properties. The jurors were not required to rule out all other potential causes, only to find that the defendant's emissions more probably than not landed on the Plaintiffs' lands. Thus, the jury's findings have a basis in fact.

DuPont's final point concerns the findings of trespass with respect to Harper's property. It is true that no soil or roof samples were tested from her land. However, Harper herself testified that she had to replace a metal roof because of corrosion, and she testified that her metal fence was heavily corroded. In both cases, the evidence showed that the rust and corrosion was heaviest on the side of the land facing the DuPont property. Harper's testimony was consistent with the Stevensons' testimony regarding the effects of corrosion. Drawing the inferences in favor of the Plaintiffs, and noting that they were neighbors, it was reasonable for the jury to conclude that if

14

DuPont's contamination affected the Stevensons, it also affected Harper.  Thus, there is an evidentiary basis for finding a trespass on the Harper property.

In conclusion, the evidence presented at trial supports a finding of trespass on the Plaintiffs' properties.  Testimony showed that the emissions from DuPont's factory were most heavily concentrated over the Plaintiffs' property and that their property showed evidence of heavy metal contamination that was most likely airborne in nature.  Accordingly, the jury could reasonably infer that a trespass was committed, and the jury's findings is affirmed.

**III. Whether the evidence presented was sufficient to justify the award of damages.**

DuPont raises two issues on appeal regarding the jury's award of damages.  First, it contends that no evidence was presented to determine whether the trespass was permanent or temporary in nature.  If a permanent trespass occurred, the Plaintiffs could recover "the difference in the market value of the land immediately before and immediately after the trespass." *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex. 1984).  Recovery for temporary trespass is limited to the "amount necessary to place the owner of the property in the same position he occupied prior to the injury." *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex. 1978).

DuPont argues that the Plaintiffs should have presented evidence that the trespass was permanent or that the pollution could have been removed from the Plaintiffs' properties to restore

15

that property to its previous condition. However, that is not the burden placed on a Plaintiff claiming trespass. In *Sadler v. Duvall,* 815 S.W.2d 285 (Tex. Ct. App.-Texarkana 1991, writ denied), the court held that "in absence of proof that repair is actually or economically feasible, the injury may be deemed permanent." *Id.* at 292. In this case, DuPont neither presented any evidence to support a temporary trespass, nor requested a jury charge on such an issue. Accordingly, it was not error for the jury to consider only damages for permanent trespass.

DuPont's second issue with respect to damages is that the evidence was insufficient to support the damages awarded. The Stevensons were awarded $168,000, and Sharon Harper was awarded $96,000; this amounts to an award of $6,000 per acre for each Plaintiff. The jury form stated that these damages were given for the "difference in the market value of the property . . . immediately before and immediately after the damage." As noted above, the *Porras* court held that this is the proper standard for the measurement of damages from permanent trespass.

The Plaintiffs again argue that DuPont waived its right to challenge any expert testimony regarding damages. However, as noted above, this argument goes only to admissibility of the evidence and does not affect consideration of the sufficiency of the expert's testimony to support the jury's verdict.

The Plaintiffs' only proof as to the value of their properties

16

was the testimony of John Fox, who opined that the value of the properties was between $10,000 to $15,000. Plaintiffs' brief characterizes Fox's testimony as showing the value of the property without pollution. The Plaintiffs also argue that their land is now worthless because they so testified. DuPont argues that the Plaintiffs description of Fox's testimony is misleading. DuPont contends that Fox valued the property as of the present time, including any possible contamination by DuPont. As to the Plaintiffs' valuation of their own properties, DuPont contends that its testimony is simply inconsistent with that of Fox, who testified as to the properties' values.

A review of the record does not support Plaintiffs' characterization of Fox's testimony. He never testifies that his values were for the property without any pollution. Fox's testimony discussed the value of the property in an industrial area, but he never mentioned that some properties were valued differently because of any potential pollution problems. Accordingly, Plaintiffs' arguments are without merit. Furthermore, Plaintiffs describe DuPont's expert's 40 percent discount as based on industrial factors. DuPont's expert only adjusted the value to note the value of residential improvements due to external obsolescence. Again, Fox never mentioned that these values assumed no pollution had occurred.

In any event, neither method is a proper method of calculating damages. Texas law is very clear that the proper measure of

17

damages for permanent trespass is "the difference in the market value of the land immediately before and immediately after the trespass." **_Porras,_** 675 S.W.2d at 504. Here, the jury was presented with testimony about only one value for the property. No evidence was presented to show the value of the land before the trespass began. As such, the jury could not reasonably have awarded the damages it did in this case.

In these circumstances, "[t]he court has discretion to order a new trial rather than judgment as a matter of law when the defect in the nonmoving party's proof might be remedied at a second trial." **_Bradley v. Armstrong Rubber Co.,_** 130 F.3d 168, 178 (5th Cir. 1997). We hold that the damages award, therefore, should be vacated and the case remanded for a new trial on damages.

## IV. Whether DuPont's appeal should be dismissed as frivolous.

In addition to DuPont's appeal, the Plaintiffs have also filed a Motion for Recovery of Damages and Costs for Frivolous Appeal Under F.R.A.P. 38. Further, Plaintiffs have also moved to strike DuPont's response to the motion as untimely. First, without undertaking a lesson in applying F.R.A.P. 27 and F.R.A.P. 26(c), we note that DuPont's response was timely filed. Second, regardless of whether DuPont's response was timely, we must still address Plaintiffs' motion. The motion is predicated on two arguments: (1) DuPont cannot appeal the trial court's findings regarding admissibility of evidence, even when couched in terms of an appeal

18

on the sufficiency of the evidence; and (2) DuPont cannot appeal the district court's failure to give an instruction on temporary trespass when it failed to preserve the right on appeal.

As to the first point, a distinction exists between the admissibility of the evidence and its sufficiency to sustain a jury verdict.  This point was addressed above.  Plaintiffs arguments do not solely address the reliability of the evidence or its admissibility.  Although some of their arguments concern reliability, their briefs, taken as a whole, argue specific facts in the testimony, not just the reliability or admissibility of the testimony.  Finally, this Court only rarely finds an appeal to be frivolous. *See, e.g., **Sturgeon v. Airborne Freight Corp.,*** 778 F.2d 1154, 1161 (5th Cir. 1985).  For example, in ***Stelly v. Commissioner,*** 761 F.2d 1113 (5th Cir. 1985), the Court held an appeal frivolous only because a great weight of the authority in the case was clearly on point and did not favor the Plaintiff. ***Id.*** at 1116.  This is not one of those cases.  This Court has previously and repeatedly denied points of error because the appellant failed to preserve the issue in the court below.  In those instances, the Court merely denied the appeal without a finding of frivolity.  This case should be no different.

Finally, because this Court is reversing the judgment as to damages, this Court cannot find that the appeal was frivolous. The reversal is a clear indication that the appeal has merit.

Therefore, the motion for damages and costs is denied.

## CONCLUSION

Based on the foregoing discussion, DuPont's point of error regarding the proper definition of trespass and its arguments concerning the sufficiency of the evidence to support a finding of trespass are without merit, and the district court's denial of the judgment as a matter of law and the jury's findings of trespass are AFFIRMED.  However, the Plaintiffs did not carry their burden of proving damages because they failed to prove the value of the land before the trespass.  Accordingly, we REVERSE on this point and REMAND for a new trial on the damages sustained by the Plaintiffs. Because we find that the damages were not properly proved, this appeal cannot be frivolous, and the Plaintiff's motion is **DENIED. AFFIRMED** in part, **REVERSED** in part, and **REMANDED.**