United States Court of Appeals
Fifth Circuit

**F I L E D**

November 25, 2003

Charles R. Fulbruge III
Clerk

**Revised December 19, 2003**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-41527

_____


FRANK J. VOGLER, Etc, et al.,

Plaintiffs,


FRANK J. VOGLER, Individually and As Representative of the
Estates of Becky Franklin Vogler and Kallie Nichole Vogler,
deceased

Plaintiff - Appellee,


versus


LLOYD S. BLACKMORE; NEW STAR FREIGHT,
New Star Freight Serve, Inc.,

Defendants - Appellants.


_____

Appeals from the United States District Court
for the Eastern District of Texas
_____


Before REAVLEY, JONES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this case Appellants Lloyd S. Blackmore ("Blackmore") and New Star Freight Service

("New Star") contend the district court erred in admitting the testimony of a "grief expert" and in

upholding the jury's damage award to Appellee Frank Vogler ("Mr. Vogler") for the future mental

anguish and loss of society due to the deaths of his wife and young child.  In addition, Blackmore and New Star maintain the district court erred in upholding the jury's award for conscious pain and suffering on the part of the decedents.  We affirm in part, order a remittitur in part, and reverse in part.

## I.  FACTS AND PROCEEDINGS

Blackmore, employed by New Star as a truck driver, was driving a tractor-trailer rig south on Highway 69 near Huntington, Texas.  Becky Vogler ("Mrs. Vogler") and her three-year-old daughter Kallie Vogler ("Kallie") were approaching Blackmore's rig on Highway 69, driving north.  Kallie was in a child-restraint seat in the backseat of Mrs. Vogler's Honda Accord.  Blackmore's tractor-trailer veered onto the right shoulder, rode the shoulder for some distance, and then came back onto the highway.  Blackmore over-corrected, however, and the truck crossed the center line and jack-knifed into Mrs. Vogler's lane.  At some point during these events, Mrs. Vogler's car left her lane of traffic and edged both passenger-side wheels off the pavement.  In addition, the Honda's speed slowed to 39 miles per hour.[1]  The rig first struck the front of Mrs. Vogler's car.  The Honda then rotated around so that the passenger side was hit by the truck.  Finally, the tractor-trailer ran over the roof of the car from front to back.  Both Mrs. Vogler and Kallie were dead by the time they were removed from their vehicle.

Mrs. Vogler's husband, Mr. Vogler; Mrs. Vogler's surviving minor children by her first marriage, Shelby Conway and Clayton Conway ("Shelby and Clayton"); and Mrs. Vogler's parents, Henry and Debra Franklin ("the Franklins") filed a wrongful death suit against Blackmore and New Star.  Shelby and Clayton settled with Blackmore and New Star prior to trial, and the Franklins

---

[1]The speed limit on Highway 69 at the point of the collision was 70 miles per hour.

settled after the verdict but before the appeal. Only Mr. Vogler's claims, and more specifically, his damages, are currently at issue. Blackmore and New Star do not contest the jury's finding of liability on appeal.

At trial, in addition to testimony by Mr. Vogler himself, the collective Plaintiffs put forth an expert in thanatology,[2] referred to by Blackmore and New Star as a "grief expert." This expert, Dr. Phyllis Silverman ("Dr. Silverman"), has a bachelor's degree in psychology and sociology, a master's in social work, and a Ph.D. in public health. She is also licensed as a social worker. She has published twenty-six papers and approximately fifty-two "other" writings in peer-reviewed journals, chapters in books, and complete books. She was a visiting scholar and resident in women's studies at Brandeis, an adjunct professor at Smith College School for Social Work, and a professor and professor emeritus at the Massachusetts General Hospital Institute of Health Professions. Because she had not interviewed or evaluated the collective Plaintiffs, the district court confined her testimony to general theories of grief and recovery.

After finding Blackmore and New Star liable for the deaths of Mrs. Vogler and Kallie, the jury awarded Mr. Vogler damages both individually and as the representative of the estates of his wife and child. The jury awarded $200,000 to Mrs. Vogler's estate for her pain and mental anguish prior to her death, and $200,000 to Kallie's estate for her pain and mental anguish prior to her death. Mr. Vogler received $400,000 for his "pecuniary loss, loss of companionship and society, and mental anguish [because of the loss of Mrs. Vogler] that was sustained in the past," and $1,500,000 for his

---

[2]Thanatology is defined as "[t]he scientific study of death, its causes and phenomena. Also (orig. *U.S.*), the study of the effects of approaching death and of the needs of the terminally ill and their families." OXFORD ENGLISH DICTIONARY 862 (2d ed. 1989).

3

future suffering in the same capacity, as well as his loss of Mrs. Vogler's future earnings. He was similarly compensated $200,000 for his loss of companionship and society and mental anguish sustained in the past because of Kallie's death, and $1,300,000 for his future suffering because of the loss of his daughter. No punitive damages were awarded by the jury. The district court upheld the jury awards against Blackmore and New Star, denying their Motions for New Trial or for Remittitur, and for Partial Judgment as a Matter of Law. Blackmore and New Star timely appeal.

## II. STANDARD OF REVIEW

"[T]he question of admissibility of expert testimony . . . is reviewable under the abuse-of-discretion standard." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). Although this Court has not ruled specifically on the admissibility of the testimony of grief experts, the admissibility of expert evidence generally is governed by the standard enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which permits admission of testimony only if it is both relevant and reliable. *Id.* at 589. Even if the expert testimony was improperly admitted, "we next review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

Blackmore and New Star characterize the future damages awarded to Mr. Vogler as excessive, entitling Blackmore and New Star to either a new trial or remittitur. When a jury's findings are not being attacked directly, but instead are challenged through a district court's decision not to grant a new trial or remittitur, the standard of review is one of abuse of discretion. *Esposito v. Davis*, 47 F.3d 164, 167 (5th Cir. 1995). "[T]here is no abuse of discretion denying a motion for new trial unless there is a complete absence of evidence to support the verdict." *Id.*

4

We give special solicitude to findings of damages for grief and emotional distress, in large part

> [b]ecause the assessment of damages for grief and emotional distress is so dependent on the facts and is so largely a matter judgment, we are chary of substituting our views for those of the trial judge. He has seen the parties and heard the evidence; we have only read papers. The jury's assessment of damages is even more weighted against appellate reconsideration, especially when . . . the trial judge has approved it.

*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 767 F.2d 1151, 1155 (5th Cir. 1985). It is under this narrow review that the jury's awards to Mr. Vogler must be evaluated.

On the issue of whether damages should be awarded at all, this Court treads lightly upon jury verdicts, as the standard of review is very deferential.[3] "Absent an error of law, the reviewing court will sustain the amount of damages awarded by the fact finder, unless the amount is clearly erroneous or so gross or inadequate as to be contrary to right reason." *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994). "Thus, reversal is proper 'only if no reasonable jury could have arrived at the verdict.'" *Stevenson v. E. I. DuPont De Nemours and Co.*, 327 F.3d 400, 405 (5th Cir. 2003) (internal citations omitted). The evidence is reviewed in the light most favorable to the prevailing party, and "[o]n each issue, 'we will not disturb the jury's verdict unless, considering the evidence in the light most favorable to [the prevailing party], the facts and inferences point so overwhelmingly

---

[3]Blackmore and New Star admit that they failed to make a Rule 50(a) motion for judgment as a matter of law, and that instead they made a Rule 50(b) renewed motion for judgment as a matter of law at the close of all evidence. As Mr. Vogler and the collective Plaintiffs below did not object to the Rule 50(b) motion as failing to follow a Rule 50(a) motion, they are precluded from arguing waiver on appeal, and thereby securing a more favorable standard of review. *See Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir. 1996) (noting that although "[g]enerally a party must make both a pre-verdict rule 50(a) motion and a post-verdict rule 50(b) motion to preserve the right to appellate review," when "the plaintiffs did not raise the waiver bar in opposing the rule 50(b) motion, they may not raise that bar on appeal").

to [the non-prevailing party] that reasonable jurors could not have arrived at a verdict except in [their] favor.'" *Streber v. Hunter*, 221 F.3d 701, 721 (5th Cir. 2000) (internal citations omitted).

### III.  DISCUSSION

A.    The Grief Expert

*Daubert* and its progeny suggest that several factors weigh in favor of finding expert testimony to be sufficiently reliable.  *Id.* at 593-94.  The Supreme Court in *Kumho Tire Co. v. Carmichael* further suggested that the *Daubert* standard is a flexible one, and that the district court should "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho*, 526 U.S. 137, 152 (1999).

While Blackmore and New Star use the word "reliable" in their argument against the admission of Dr. Silverman's testimony, they substantively allege that the testimony was not relevant because it was unconnected to the case.  Because the focus of Blackmore and New Star's arguments is whether Dr. Silverman's testimony was connected to the case such that it would assist the jury in determining a fact at issue, the focus is properly the *relevance* of her testimony, which, according to *Daubert*, is a question of "whether the reasoning or methodology properly can be applied to the facts in issue."  509 U.S. at 592-93.[4]

This Court, while not specifically addressing the relevance of a grief expert, has opined on the intersection of relevance and expert testimony.  In *Bocanegra v. Vicmar Services, Inc.*, for instance,

---

[4]As the issue of reliability was not properly raised by Blackmore and New Star, we do not address whether the testimony of a grief expert is, generally speaking, reliable.

this Court concluded that the district court improperly excluded as irrelevant the expert testimony of a toxicologist about the effects of marijuana on cognitive functions after the "high." 320 F.3d 581, 587 (5th Cir. 2003). The district court in *Bocanegra* had excluded the testimony because the toxicology expert could not point to any causal connection between the defendant's marijuana use and the accident. *Id.* On appeal, however, this Court explained that after the expert's extensive testimony about studies demonstrating the effect of marijuana use on cognitive functions,

> [b]ecause of [the expert's] knowledge and training in the field of toxicology, his testimony would have been helpful to the fact-finder, *not because it would have explained the connection between the marijuana and the accident*, but because it explained the effect of recent ingestion of marijuana on an individual's cognitive functions, including perception and reaction time, both critical factors in any accident.

*Id.* at 587 (emphasis added). It is therefore unnecessary given these facts that Dr. Silverman's testimony explain the connection between Mr. Vogler's grieving and the accident.

Blackmore and New Star insist that Dr. Silverman's testimony would not have "assisted" the jury, *see* Federal Rule of Evidence 702, because grief is a universally experienced emotion that is well within the common sense understanding of jurors and requires no expert testimony.[5] In support of this contention, Blackmore and New Star point to several federal courts that have upheld the exclusion, in varying circumstances, of proffered grief expert testimony.[6] The admission of such

---

[5]The Advisory Note to Rule 702 states:
> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

FED. R. EVID. 702, Advisory Committee Note.

[6]*Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 931-32 (1st Cir. 1991); *El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483, 487 (4th Cir. 1986).

testimony, claim Blackmore and New Star, might unduly influence the jurors with its scientific appearance and might even serve as a surrogate for the testimony of a plaintiff.

It is undeniable that all of the dangers alluded to by Blackmore and New Star lurk in the relatively untested area of grief expert testimony. But Blackmore and New Star do not argue categorically against the admission of such testimony, nor do they challenge the credentials of Dr. Silverman. Thus, they acknowledge that the decision to admit her testimony lay in the trial court's balancing of several factors – whether the jury was competent to assess the evidence intelligently without expert testimony, whether the evidence had probative weight, and whether the risk of prejudice was greater. Even the cases cited by Blackmore and New Star permitted the exclusion of grief expert testimony *as an exercise of the trial court's discretion*. Because Dr. Silverman's testimony was relevant, if not necessary to the jury, the district court did not abuse its discretion in admitting the evidence.

Further, *even if* we were to find that the district court abused its discretion in admitting Dr. Silverman's testimony, the admission of that testimony was harmless. The facts of this case are tragic: a mother and child are dead, leaving a grieving father to care for his wife's children from a prior marriage while attempting to care for himself. Evidence presented by the collective Plaintiffs at trial included pictures of a happy family and the mangled, flattened remains of Mrs. Vogler's car. It is highly unlikely that Dr. Silverman's testimony aided in the jury's resolution of the case or in its awards to Mr. Vogler.

B.    The Award to Mr. Vogler

8

When evaluating jury awards, this Court reviews such awards in the context of awards in cases with similar injuries in the relevant jurisdiction. *Salinas v. O'Neill*, 286 F.3d 827, 831 (5th Cir. 2002). This Circuit has limited searches for federal discrimination law awards to the "relevant jurisdiction" of the Fifth Circuit. *Id.* The relevant jurisdiction in a wrongful death case is the state providing the substantive law for the claim. Therefore Texas wrongful death cases and Fifth Circuit cases applying Texas wrongful death law comprise the relevant jurisdiction.

This Circuit employs the "maximum recovery" rule when granting a remittitur. To this end, damages are reduced to the maximum amount a reasonable jury could have awarded. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001). In order to calculate this amount, this Court looks not only to actual awards, but may also apply a multiplier of fifty percent to past similar awards, so long as no multiplier was used in calculating those past awards. *Salinas*, 286 F.3d at 831, 831 n. 6.

(1)     Jury damage awards for the death of a spouse.

Few, if any, of the awards cited by either side differentiate between past and future suffering and loss of companionship. Because Blackmore and New Star do not object to the awards by the jury for Mr. Vogler's suffering and loss of companionship in the past, only cases in which future damages are explicitly designated are proper bases of comparison.

Only one case in the relevant jurisdiction, *Douglass v. Delta Air Lines, Inc.*, 709 F. Supp. 745 (W.D. Tex. 1989), *aff'd in part, rev'd in part*, 897 F.2d 1336 (5th Cir. 1990) has divided damages

as they are herein contested.[7]  In *Douglass*, a woman was awarded $400,000 for her future mental anguish and future loss of companionship due to the loss of her husband.

Based on *Douglass*, the maximum recovery for Mr. Vogler, using the 50% multiplier, would seem to be $600,000.  The award to Mr. Vogler for his future damages, however, included pecuniary loss that would be sustained in the future, as well as loss of companionship and mental anguish.  At trial, Mr. Vogler's economic expert testified that the present value of Mrs. Vogler's future earning capacity as a dent al assistant was between $455,000 and $700,000, with an addition of up to $200,000 for the value of household services.  Although Blackmore and New Star characterize the future pecuniary loss as the $200,000 difference between the award for Mrs. Vogler and the award for Kallie, such justification was not made by the jury.  The jury therefore *could* have accepted Mr. Vogler's expert's valuation of his wife's future earnings and future household services to be as high as $900,000.  Added to the maximum amount recoverable for future pain and suffering, even under the cases cited by Blackmore and New Star, the jury could have reasonably awarded Mr. Vogler $1.5

---

[7]Other cases cited by the parties which do *not* differentiate between past and future suffering include:  *Larsen v. Delta Air Lines, Inc.*, 692 F. Supp. 714 (S.D. Tex. 1988) ($1 million for loss of companionship and mental anguish, past and future, for a woman's loss of husband); *Hope v. Seahorse, Inc.*, 651 F. Supp. 976 (S.D. Tex. 1986) ($225,000 for loss of companionship and mental anguish, past and future, for a woman's loss of husband and $350,000 for future mental anguish and future loss of companionship for minor child's loss of parent); *Air Florida, Inc. v. Zondler*, 683 S.W.2d 769 (Tex. App. 1984) ($500,000 for loss of consortium and companionship, past and future, for a woman's loss of husband.  It is important to note that, at the time, Texas did not permit recovery for mental anguish in a wrongful death suit for loss of a spouse absent physical injury.  As a result, the court on appeal eliminated an additional $300,000 award for past and future mental anguish to the wife.  Under current interpretations of Texas wrongful death law, the amount of recovery would be $800,000); *Monsanto Co. v. Johnson*, 675 S.W.2d 305 (Tex. App. 1984) ($500,000 for loss of consortium and companionship, past and future, for a woman's loss of husband.  At the time of this case, Texas did not permit recovery for mental anguish in a wrongful death suit for loss of a spouse absent physical injury).

million[8] for the "pecuniary loss, loss of companionship and society, and mental anguish that in reasonable probability will be sustained in the future." We therefore affirm the ruling of the district court upholding the award to Mr. Vogler for the loss of his wife.

Blackmore and New Star distinguished higher awards as factually dissimilar to the case at bar. Because no remittitur is warranted under the maximum recovery rule using cases alleged by Blackmore and New Star to be sufficiently similar, the issue of higher awards need not be addressed.

(2)     Jury damage awards for the death of a child.

None of the cases cited by either Blackmore and New Star or Mr. Vogler address awards made in a wholly similar situation -- where a man has lost both his wife and his child. Further, only one of the cases seems to distinguish between past and future loss of companionship and mental anguish. In the case of *Haskett v. Butts*, 83 S.W.3d 213 (Tex. App. 2002), a woman was compensated for her future pain and mental anguish at the loss of her stillborn child with an award of $100,000. Although this case deals specifically with future pain and mental anguish, we find that it is not a "similar" injury for purposes of comparison with the present case. Texas law deals with the issue of stillborn fetuses and mental anguish as separate from the death of a child, since, under Texas law, "a fetus is a part of the mother's body." 83 S.W.2d at 218. Because of this definition of the fetus, a jury cannot include in its damage award amounts for loss of society, companionship, or

---

[8] $600,000 (future mental anguish) + $700,000 (future earning capacity) + $200,000 (future value of household services) = $1,500,000.

11

affection due to the loss of the fetus. *Id.* at 220.  *Haskett* is therefore not an appropriate comparison for the case at bar.[9]

Complicating our review of the award to Mr. Vogler for Kallie's death is that no cases cited by either party separate past and future loss of companionship and mental anguish.[10]  All that seems evident from the relevant caselaw is that awards for the loss of a child vary widely.

Our review of the caselaw reveals that there is no factually similar case in the relevant jurisdiction; therefore, the maximum recovery rule is not implicated.  As we noted in another case in which remittitur was requested, "[b]ecause the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited 'if unique facts are present that are not reflected within the controlling caselaw.'" *Lebron v. United States*, 279 F.3d 321, 327 (5th Cir. 2002).  Nothing recommends remittitur in this case, and we will not substitute our judgment for that of the jury.  As the judgment of the district court in upholding the award is not contrary to reason, we affirm.

C.    The Award to the Estate of Mrs. Vogler

---

[9]We note that even Blackmore and New Star do not suggest that $100,000 plus the fifty percent multiplier is appropriate compensation for Mr. Vogler's loss.

[10]Mr. Vogler cites *Sanchez v. Brownsville Sports Ctr.*, 51 S.W.3d 643 (Tex. App. 2001) ($7.5 million to each parent for all damages, possibly including punitive damages, arising from the loss of a child.  No mention of mental anguish or loss of companionship specifically); *Gen. Chem. Co. v. De La Lastra*, 852 S.W.2d 916 (Tex. 1993) ($5 million to each parent for mental anguish and loss of companionship, past and future, for the loss of two sons. Father underwent therapy, mother described as "nonfunctional"); and *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420 (5th Cir. 1992) ($1,225,000 for mental anguish and loss of companionship, past and future, to a single mother for loss of a child).  At the opposite extreme, Blackmore and New Star cite *Russell v. Ramirez*, 949 S.W.2d 480 (Tex. App. 1997), in which a woman was awarded $750,000 for loss of companionship and mental anguish, past and future, for the loss of her son.

12

Mr. Vogler, as representative of the estate of Mrs. Vogler, was awarded $200,000 for Mrs. Vogler's conscious pain and suffering and mental anguish prior to her death. Blackmore and New Star argue that this award lacks evidentiary support, or, in the alternative, that this award is excessive.

Blackmore and New Star first contend that the collective Plaintiffs presented insufficient evidence at trial of the suffering of Mrs. Vogler and Kallie prior to their deaths. They point out that the expert put forth by the collective Plaintiffs estimated that, at most, the accident took place over a period of mere seconds, and that, as a result, any award for conscious pain and suffering is based purely on speculation. To buttress this argument, Blackmore and New Star offer cases decided under Texas law in which damages for conscious pain and suffering were upheld, based in part upon available testimony. *See Torrington Co. v. Stutzman*, 36 S.W.3d 511 (Tex. App. 1999), *aff'd in part, rev'd in part*, 46 S.W.3d 829 (Tex. 2000) (upholding a jury verdict when another passenger testified to his mental anguish as a helicopter crashed); *Gen. Motors Corp. v. Saenz*, 829 S.W.2d 230 (Tex. App. 1992), *rev'd on other grounds*, 873 S.W.2d 353 (Tex. 1994) (upholding a jury verdict for conscious pain and suffering where the impending crash caused "panic steering").

We find the cases cited by Blackmore and New Star somewhat persuasive. There is a case, however, that is nearly factually identical, and therefore more persuasive. In *Rodriguez v. Great Western Leasing, Inc.*, 882 F. Supp. 99 (E.D. Tex. 1995), an estate pursued a survival action after the collision of a pick-up truck and an eighteen-wheeler resulted in the deaths of the three truck passengers. 882 F. Supp. at 99. After the jury awarded substantial damages for the decedents' mental anguish prior to death, the defendants moved for a judgment notwithstanding the verdict, arguing, like Blackmore and New Star, that there was no evidence "to support a jury finding that decedents were consciously aware of an impending collision or otherwise suffered mental anguish."

13

*Id.* at 100. The district court acknowledged that there was no direct evidence of mental anguish; as a result, the issue was whether the jury was presented with evidence sufficient to permit it to use discretion to award damages. In evaluating the plausibility of alternate scenarios that would have resulted in the crash, the court observed that

> [a]fter considering each [plausible scenario], the court concludes there was sufficient circumstantial evidence for the jury to reasonably infer that occupants of the pick-up truck became aware of the impending crash with the defendants' truck and oversized load *immediately prior to the collision*. Under each scenario, the decedents' vehicle entered into a skid prior to the collision with the eighteen-wheel rig. This is the type of event which more likely than not would command attention despite routine distractions, and compel persons to assess whether they were in imminent peril. *If the jury found that decedents became aware of peril, the jury could also infer under the circumstances that they sensed they were facing certain catastrophic injury*.

*Id.* (emphasis added). Because the district court found it permissible for the jury to make two inferences about the circumstances surrounding the crash in order to arrive at the conclusion that the decedents had suffered some mental anguish prior to their deaths, there was legally sufficient evidence of pre-death emotional suffering, precluding the grant of a judgment notwithstanding the verdict. *Id.*

Similarly, the collective Plaintiffs presented evidence to the jury, albeit circumstantial evidence, that Mrs. Vogler was aware of the impending crash and its possible consequences. There was evidence that Mrs. Vogler was driving on the shoulder of the road and had slowed her speed to thirty-nine miles per hour, which could permit the jury to infer that she was taking evasive action prior to impact. It could be argued that the shifting of lanes by an oncoming truck, like the entering of a skid in *Rodriguez*, is "the type of event which more likely than not would command attention despite routine distractions and compel persons to assess whether they were in imminent peril." 882 F. Supp.

14

at 100. It is not even relevant for purposes of the jury's determination of the mere presence of pre-death mental anguish that the awareness lasted, at most, three and a half seconds. In *Rodriguez,* a jury was permitted to find decedents suffered mental anguish prior to death even though the "greater weight of the evidence suggests that there were *only one or two seconds, or less*, of skidding before the crash." 882 F. Supp. at 101 (emphasis added). While the shortness of the suffering may affect the computation of the damage award, *see infra*, it does not necessarily affect the discretion of the jury in finding the presence of mental anguish prior to death. We therefore rule that there was sufficient evidence presented to the jury that it *could* have found that Mrs. Vogler experienced conscious pain and suffering prior to her death.

Although the jury was presented with sufficient circumstantial evidence to conclude that Mrs. Vogler felt conscious pain and suffering prior to her death, none of the factually-similar cases in this Circuit supports the extensive damages awarded by the jury. In *Rodriguez*, the case that is most factually similar to the present case, the district court observed that "[n]o published precedent supports a finding of $100,000 for a few seconds of mental anguish preceding instantaneous death under Texas law." 882 F. Supp. 99, 100 (E.D. Tex. 1995). Because nothing in *Rodriguez* suggested extensive mental anguish -- at most there were less than eight seconds, and more than likely only one or two seconds of pre-impact mental suffering -- the court concluded the maximum award was $20,000 per decedent. *Id.* at 101. Similarly, in *Hurst Aviation v. Junell*, the court concluded that $20,000 was *not* excessive for the pre-death mental anguish suffered by a pilot as he lost control of his plane and crashed into the ground. 642 S.W.2d 856, 859 (Tex. App. 1982). Applying the fifty percent multiplier to these awards, the maximum amount that could be awarded to the estate of Mrs.

15

Volger for her conscious pre-death mental suffering is $30,000. We therefore order a remittitur such that the total award to Mrs. Vogler's estate is $30,000.

D.       The Award to the Estate of Kallie

Mr. Vogler, as representative of the estate of Kallie, was awarded $200,000 for her conscious pain and mental anguish prior to her death. Blackmore and New Star argue that this award lacks evidentiary support, or, in the alternative, that this award is excessive.

While the movements of Mrs. Vogler's car prior to impact could support a jury finding that she was aware of the impending crash, there is absolutely no evidence, circumstantial or otherwise, to suggest that three-year-old Kallie, secured in her child restraint seat directly behind Mrs. Vogler, had any hint of the impending disaster. Mr. Vogler contends that "certainly Kallie perceived her mother's panic, and was frightened herself." This inference built upon the supposition of Mrs. Vogler's panic is simply too attenuated for reasonable jurors to have arrived at a verdict in favor of Kallie's estate. Further, because we permitted a jury finding in favor of the conscious pain and suffering of Mrs. Vogler based in large part on the circumstantial evidence of her *awareness* of the impending collision, we find Mr. Vogler's argument that Kallie suffered additional conscious mental anguish because her portion of the car was crushed milliseconds after the driver's seat was impacted unavailing. We must therefore conclude that the district court erred in upholding an award for Kallie's conscious pain and suffering prior to her death.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED with respect to the admission of Dr. Silverman's expert testimony and the jury award for Mr. Vogler's future pain

16

and suffering because of the deaths of his wife and daughter. The judgment of the district court is also AFFIRMED with respect to its affirmance of the jury's finding of conscious pain and suffering on the part of Mrs. Vogler. We order a REMITTITUR of the amount of damages awarded for Mrs. Vogler's conscious pain and suffering for either a total award of $30,000 or a new trial for these damages alone. Finally, the judgment of the district court is REVERSED with respect to the affirmance of the jury's award to the estate of Kallie for her conscious pain and suffering.

REAVLEY, Circuit Judge, dissenting:

I agree with the judgment except for the rejection of the jury awards for the suffering of the mother and child. Those $200,000 awards do not shock my conscience or seem to me to be unjust or contrary to reason. Because that is the legal limit to my review, I would not interfere. The decision about non-pecuniary damage awards is necessarily subjective. Apart from the Seventh Amendment and with respect, I would personally prefer that the decision be made after a full and fair trial by these eight jurors rather than by my fine judicial colleagues.

Becky Vogler saw the eighteen-wheeler veer off the pavement and then head into her path. She slowed and turned across the paved shoulder. But her Honda struck the right front wheel of the Freightliner truck and was then jammed beneath the cab. With the cab on top of the Honda's engine and part of its passenger compartment, and with the trailer at an angle, the mass traveled 90 feet across muddy ground to hit and stop at a tree. Becky's mental anguish may have existed only for moments, but those were horrifying moments. Her pain was mercifully sudden, but felt.

Kallie Vogler was not an infant. She sat confined in the back seat and was most likely aware at some point of her danger. It would be reasonable to believe that this young girl experienced terrible fright and some pain before death. My colleagues hold that there can be no damages for Kallie's estate because there is no proof that she suffered any pain or mental anguish. While no witness could testify to screams or terror, or to just how she was crushed, her position and age as she faced and felt this horror supports the contrary finding.

My colleagues compute the mother's damages, as they do that of the husband and father, by what has come to be the maximum recovery exercise in this circuit. Departing from the rule of deference to jury verdicts, the court lists the awards by different juries and judges, for different parties under different circumstances, adding a percentage for the sake of reasonableness, and thereby fixes the maximum recovery allowable in the case on appeal. This practice has been gently described as a quagmire.[11] By using a Texas court of appeals decision and a district court opinion, my colleagues decide that $30,000 is the maximum allowed for the pain and anguish experienced by Becky Vogler.

I dissent.

---

[11] Madigan, Excessive Damage Review in The Fifth Circuit: A Quagmire of Inconsistency. 34 Tex. Tech L.R. 429 (2003).